## THE PEOPLE *v.* WALKER and others.

The word *until*, in an act continuing the charter of a corporation "until the first day of January," is exclusive in its meaning. The charter expires with the thirty-first day of December.

The contribution to the Safety Fund, required by ch. 94 of 1829 to be paid on or before the first day of January in each year, is payable only by the banks having a corporate existence on the day when the payment becomes due, and does not constitute a debt against a corporation whose charter expired with the preceding year.

APPEAL from the Supreme Court. The defendants were sued as directors of the Bank of Utica at the time of the expiration of its charter, and becoming, as such, trustees for its creditors and stockholders, to recover $3,000, being one-half of one per cent upon the capital of the bank, which became due, as its contribution to the Safety Fund, on the 1st day of January, 1850. The charter of the bank was granted in 1812, and expired, by its terms, in 1832. By an act passed in 1829 (*ch.* 216, 340), the original act of incorporation was "continued in force until the first day of January, one thousand eight hundred and fifty." Upon the trial, the plaintiffs had a verdict, and the judgment rendered thereon having been affirmed at general term in the third district, the defendants appealed to this court.

*Selah Mathews,* for the appellants.

*John H. Reynolds,* for the respondents.

JOHNSON, Ch. J. The charter of the Bank of Utica was, by chapter 216 of the Laws of 1829, continued in force until the 1st day of January, 1850, and it is material *to* consider and determine whether the bank had a corporate existence on that day, or whether it ended with the 31st day of December, 1849. The language of the act itself, in

its other provisions, affords no further clue to the legislative intent upon this point. 'Those provisions are all as consistent with the one construction as the other. The word "until" is very frequently employed in a sense excluding the day named, and that is its more obvious meaning, though it must be conceded that a very slight matter in the context would be sufficient to give it a different and inclusive sense. (*King* v *Stevens*, 5 *East*, 244.)

It is used in the exclusive sense in article 1, section 16 of the constitution of 1822, and in sections 6 and 11 of article 14 of the constitution of 1846. But the consideration which to me seems strongest, and indeed conclusive upon its meaning in this act, is the obvious one, that to give the word its exclusive meaning ends the corporation at the close of the legal and political year. All our habits and usages point to that as the natural meaning of the word in such a connection, and are opposed to a construction which would give to the corporation just one day's existence in a new year. If this be so, then on the 1st of January, 1850, the corporation had ceased to exist, and of course all corporate being and authority were at an end.

The comptroller, on the 13th October, 1841, had given notice that the Safety Fund was impaired, and had required of this bank, as well as of all the other safety fund banks, a contribution of one-half of one per cent upon its capital, to be paid on or before January first, then next. The bank paid the one-half per cent, payable January 1, 1842, and made seven other similar and subsequent payments, and the question is as to its liability to pay another equal sum, which by the terms of the statute, as is claimed, was payable on or before January 1st, 1850.

By the safety fund act (*ch.* 94, *Laws of* 1829), the corporations subject to its provisions were to pay, on or before the first of January in every year, one-half of one per cent on their capital, and at that rate for the time the corporation had been in operation, if less than one year. These

payments were to be continued till every corporation had paid three per cent, on its capital,. and the fund thus created was to remain a perpetual fund, to be applied to the payment of such of the debts of any of those corporations, on their insolvency, as their assets should be insufficient to pay. The income of the fund was to be annually paid to the corporations by whose contributions it had been created, in proportion to the amounts contributed; but no corporation was to be entitled to any part of the income after it should become insolvent, or be dissolved, or its charter should expire. When its charter should expire, each corporation ·was to receive its proportionate share of the fund, after deducting a proportional part of the charges upon it. These were substantially the provisions of law relating to the fund, and which would control its administration until some one or more corporations should become insolvent, and, by the insufficiency of their assets to pay their debts, should reduce the fund below the amount of three per cent on the aggregate capital of all the corporations subject to the law.

In these provisions, it will be observed, there was reference had to time as one element in fixing the amount of the contribution, inasmuch as the first payment, in case the corporation had not been in operation for a year, was to be made at the rate of one-half of one per cent a year, while the other payments, until the whole three per cent should be paid, were to be one-half of one per cent on each succeeding first of January. When, however, by the occurrence of insolvency, the fund should be reduced below three per cent, the law provided that every corporation subject to the act should, on or before the first of January in every year thereafter, pay to the treasurer of the state "such sum, to be designated by the comptroller, not exceeding a sum equal to one-half of one per cent on its capital stock, as hereinbefore provided, which last mentioned annual payments," the act provides, "shall continue to be made by every cor-

poration subject to this act, until the aforesaid fund shall be reimbursed," &c.

It is, of course, plain, that whether the event, on which the duty would arise to make further contribution, should occur on the second of January or on the thirtieth of December, one-half per cent, and no more than that sum, would be payable on the succeeding first of January, and that no further sum would be payable until another year should have elapsed. Upon this ground, it is contended that the lapse of time did not enter as an element into the provision in question, to regulate the amount of contribution, and that the law is to be regarded as a mere tax law, operating upon such corporations only as, on the day fixed for payment, should happen to be within its terms. It is, I think, plain that the near coincidence in the time of the expiration of the charter of this bank and the day of payment, is not a ground which can have any bearing upon the decision. This bank is not liable, unless a bank would be liable whose charter had expired on the first of November; and this brings the case to the question, whether these payments are to be looked upon as standing on the footing of quasi contract, where the payment required is to be regarded as having been earned by a risk incurred, or whether they stand as a mere tax, regulated only by the expressed will of the legislature. If the case is to be treated as standing on the first ground, then it is the payment only which is postponed to the first of January. The obligation is to be regarded as having existed from the time when the necessity for further contribution arose, and its extent must be measured by the period intervening between that time and the expiration of its charter. Thus, each bank would be bound to contribute to the fund for the period during which its creditors would be entitled to the protection of the fund against its insolvency. Although this general idea of common benefit to all the corporations concerned, in compensation for the common burden imposed

upon them, probably was the basis on which the legislature proceeded in framing the law, yet I think they have not left it in our power to work out the exactly equitable result which parties entering into an agreement for the same general purpose might have provided for. Thus, new corporations must pay to make up deficiencies which arose before their existence. Only the actual reduction of the fund by payments, below the amount of three per cent, creates the occasion for further payment, and thus a corporation ceasing to exist just before the reduction actually happens, must escape altogether, notwithstanding it had existed during the whole period in which the liabilities were created, the actual payment of which effects the reduction.

If the corporation were to expire in the very year when the reduction should take place, and it is to contribute such a proportion of one-half of one per cent as the period of its existence after the comptroller's notice bears to one year, or to the whole time between the time of the notice and the succeeding first of January, the result thus arrived at would not be the equitable one; and by adopting such a rule, we should only be substituting an arbitrary rule of our own invention for one prescribed in the law.

I am of opinion, therefore, that in this case, as in many others, the safe rule, and that which will lead to less uncertainty, and perhaps work out as just results as any other which we are at liberty to adopt, is to follow the terms of the statute, and hold that only corporations existing on the day when the payment was to be made are liable to make it.

Roosevelt, J., dissented; Denio, J., did not sit in the case; all the other judges concurring,

Judgment reversed and new trial ordered.