## Newby *v*. Rogers.

STATUTE OF FRAUDS.—*Construction.*—"*Party to be Charged.*"—By the words, ."the party to be charged," in the statute of frauds, must be understood the defendant in an action.

SAME.—*Sale of Chattels.*—*Memorandum.*—*Evidence.*—A. engaged, by a writing signed by him alone, to furnish to B. a certain number of hogs, of a certain average weight, at a stipulated price per head, between specified dates, acknowledging the receipt of a certain sum upon the contract.

*Held*, in a suit by A. against B., for the failure of the latter to receive and pay for the hogs, that the writing, not being signed by the party to be charged, was not a valid and binding note or memorandum in writing under the statute of frauds.

*Held*, also; that the writing, in connection with evidence that the defendant assented to it, and treated it as a memorandum of a contract made between the parties, was admissible in evidence in support of a paragraph of a complaint upon a parol contract.

*Held*, also, that the testimony of a third person, that he bought hogs about the same time, at eight dollars per hundred, was improper.

PLEADING.—*Written and Parol Contract.*—Paragraphs of a complaint based upon a written contract cannot be sustained as paragraphs upon a parol contract.

SAME.—*Tender.*—Where it is necessary to plead a tender of performance, a general allegation, that the party was ready and willing at all times to perform all the stipulations and conditions in the contract, is insufficient.

SAME.—*Time.*—*Computation.*—Where property is contracted to be delivered, "from the 15th to the 28th" of a specified month, both the 15th and the 28th are to be excluded; and in a suit upon such contract, evidence of an offer or tender on the 28th is improper; and a pleading alleging a tender on the 28th is bad.

APPEAL from the Henry Common_Pleas.

DOWNEY, J.—The appellee sued the appellant for damages for not accepting and paying for certain hogs which had been sold to him by the appellee. The complaint consisted of six paragraphs. The first was upon this instrument:

"AUGUST 14th, 1870.

"E. Rogers engages twenty-five head of hogs to W. B. Newby at eight dollars per hundred, and is to average two hundred and seventy-five pounds each, and is to be delivered from the 15th to the 28th of November. Received on the contract, twelve dollars.      EDWARD M. ROGERS."

It is alleged that subsequent to the execution of the contract the word "net" was inserted in the contract, but without the knowledge, authority, or consent of the plaintiff, is no part of the contract, and is contrary to the agreement between the parties; that immediately after its execution the contract was delivered to the defendant, and has ever since remained in his possession; and that ·he paid the twelve dollars in part performance of the contract; that prior to and on the 28th day of November, 1870, the plaintiff tendered to the defendant twenty-five head of well-fatted hogs, at his farm, where said contract was made, of the average weight of three hundred and sixty-three pounds, pursuant to said contract, but the defendant refused to accept and pay for the same; that at the time and place for the delivery of said hogs, they were worth only six dollars per hundred, and that the plaintiff was compelled to and did sell the same on the 13th day of November, 1870, for six dollars per hundred pounds, that being the fair market price of such hogs, to the damage of the plaintiff in the sum of two hundred dollars.

The second paragraph is based on tne same writing, and is similar to the first, except that it alleges that the word "net" was inserted in the contract by mistake, accident, or the fraud of the scrivener who wrote the contract, and asks a reformation of the contract in that respect.

The third paragraph is based upon a contract of the same import as that in the first, alleging payment of the earnest,

or in part performance, but not stating whether the contract was in writing or not.

The fourth is also on the written contract, alleging that the word "net" was inserted since its execution, without the knowledge or consent of the plaintiff, and stating generally that the plaintiff offered to perform all the conditions of said contract on his part, but the defendant refused to accept and pay for said hogs; and that the plaintiff, on the 1st day of December, 1870, sold them for six dollars per hundred pounds.

The fifth paragraph is the same as the third, except that it states that the contract was by parol, and it alleges generally a readiness on the part of the plaintiff to perform his part of the contract, without stating when or where, or in what manner the offer was made.   It states also a refusal of the defendant to comply with the contract on his part.

The sixth paragraph is on the written contract, and is the same as the first, except that it alleges the alteration of the contract by the insertion of the word "net" to have been made by the defendant, without the consent of the plaintiff.

The defendant demurred jointly to the first, second, fourth, and sixth paragraphs of the complaint, for the reason that neither of them stated facts sufficient to constitute a cause of action. *Barner* v. *Morehead*, 22 Ind. 354.   The demurrer was overruled, and this is the first error alleged.

A section of the statute of frauds reads as follows: "No contract for the sale of any goods, for the price of fifty dollars or more, shall be valid, unless the purchaser shall receive part of such property, or shall give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing of the bargain be made, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized." 1 G. & H. 351, sec. 7.

We are of the opinion that the writing in this case cannot be regarded as a valid and binding note or memorandum, under this statute, against the defendant.   To be valid, it

must be signed by the party to be charged thereby, or by some person thereto by him lawfully authorized. When the statute speaks of "the party to be charged," it must be understood to mean the defendant to the action. The note or memorandum must be signed by him, but need not be signed by the plaintiff. *Shirley* v. *Shirley*, 7 Blackf. 452; *Smith* v. *Smith*, 8 Blackf. 208.

The paragraphs in question cannot be sustained as paragraphs upon a parol contract. They do not allege the making of a contract, except that which they state was made by the writing.

The fourth paragraph of the complaint is liable to another objection. It, as we have seen, simply states, in general terms, after alleging the making of the contract, and the payment of the twelve dollars as a part of the price, that the plaintiff was ready and willing, at all times, to perform, on his part, all the stipulations and conditions in the contract, but the defendent failed and refused to perform said contract on his part; and then alleges the value of such hogs at the time of delivery, concluding *ad damnum*. Counsel for the appellee rely upon section 84, 2 G. & H. 108, to sustain this manner of pleading a tender of performance.

The section is as follows: "In pleading the performance of a condition precedent in a contract, it shall be sufficient to allege, generally, that the party performed all the conditions on his part; if the allegation be denied, the facts showing the performance must be proved on the trial."

This section, as will be seen, relates to the pleading of performance of precedent conditions, and not a tender of performance only, and hence does not apply to the paragraph under consideration.

Another objection urged to all these paragraphs is, that they show that the contract was made on Sunday, the 14th of August, 1870, having been Sunday. There are several reasons why this objection is not allowable. We do not stop to state them here; but see *Heavenridge* v. *Mondy*, 34 Ind. 28.

The defendant answered, first, the general denial; and second, "that on the 14th day of August, 1870, the said parties entered into a written contract, a copy of which is filed herewith and made a part of this answer, whereby plaintiff agreed to deliver to the defendant twenty-five head of hogs, to average two hundred and seventy-five pounds, and to be delivered from the 15th to the 28th day of November, 1870, said defendant to pay plaintiff eight dollars per hundred, net, for said hogs, and then and there paid twelve dollars on said contract to said plaintiff; and that subsequently to the execution of said contract, to wit, between the 15th and 28th days of November, defendant properly and legally demanded said hogs of said plaintiff, and that the plaintiff failed and refused at that or any other proper time to deliver said hogs to defendant, in pursuance of the contract; that the defendant was ready and willing to pay said plaintiff for said hogs on delivery, and to perform all other things required of him by said contract. The defendant therefore says that the plaintiff is indebted to him in the sum of twelve dollars for money had and received, and for fifty dollars damages for breach of said contract on the part of the plaintiff, all of which remains unpaid and is now due defendant from plaintiff; and defendant demands judgment for sixty-two dollars, which amount, or any other amount that may be found due, defendant offers to off-set against any amount that may be found due the plaintiff from the defendant." The written contract referred to in this paragraph of the answer is the same exactly as that set out in this opinion above, with the exception that it contains the word "net" immediately after the word hundred. A demurrer was filed by the plaintiff to the second paragraph of the answer, and it was overruled, but no question is made as to this action of the court.

The plaintiff replied, first, a general denial; and, second, that he never executed the contract set up in the defendant's answer, and that it is not his contract, as it now contains the word "net." The second paragraph of the reply was verified by the oath of the plaintiff.

There was a trial by the court, a finding for the plaintiff for one hundred and sixty-nine dollars and eighty cents, a motion for a new trial overruled, and judgment for the plaintiff for the amount of the finding.

The evidence is not all in the record, and hence no question depending upon its sufficiency is before us.

But, notwithstanding the bill of exceptions does not set forth all the evidence, it does set forth parts of it, and certain questions are presented with reference to the rulings of the court in admitting those parts.

The first question made relates to the ruling of the court in permitting the writing referred to to be given in evidence. We are of the opinion that the written instrument was proper, in connection with the parol evidence that the defendant assented to it and treated it as the contract between the parties, to prove the contract set up in the third and fifth paragraphs of the complaint. So far as he is concerned, the contract must be treated as resting in parol. But if he assented to the written instrument as embodying the contract which was really made, we do not see why the instrument, in connection with his admission, was not proper evidence.

The payment of part of the price took the case out of the statute of frauds, but still as to the defendant the contract was a parol contract. It was proper to prove it by any evidence competent and sufficient to prove such a contract.

The second question relates to the admission by the court of parol evidence in support of the contract. This, we think, was proper for the reason already stated. The contract as to the defendant was a parol contract. As against him, the writing had no effect in evidence, except to show what it was to which he assented.

The third point is that the court erred in permitting the plaintiff to file his reply to the second paragraph of the answer, after the commencement of the trial. The bill of exceptions says that the plaintiff asked leave to file the reply, and gave no excuse for not having previously done so, except that the defendant's counsel, previous to going into trial,

stated to the plaintiff's counsel that the answer was the general denial only. We are not prepared to say that this was not a sufficient ground upon which to grant the permission. Counsel must be allowed, to some extent, to rely upon the statements of opposing counsel. The code authorized the court to allow the pleading to be filed. If the defendant, on account of the filing of the reply, was not prepared to proceed with the trial, the court might, on his application, have given him time by postponing the trial or granting a continuance. 2 G. & H. 117, secs. 97, 98, and 99.

The fourth point relates to the permission given by the court to the plaintiff to testify as a witness that the word "net" was not in the contract when he signed it. The object of this evidence was, we presume, to show the terms of the contract upon which the parties had agreed. The ground of objection is, that there was no denial of the execution of the writing, under oath, by the plaintiff. The question presented was, did the defendant assent to the contract with or without the word "net" in it? The plaintiff had denied, under oath, the execution of the writing with the word "net" in it, in his reply, and there was no objection that the evidence should have come as rebutting evidence from the plaintiff. Indeed, the record does not show any evidence by the defendant to which this evidence could be rebutting; nor does it show that the evidence in question was not introduced as rebutting evidence. We cannot know that it was not, for the reason that all the evidence is not in the record; nor does the bill of exceptions in any way show that it was not rebutting evidence.

The fifth objection is, that the court allowed the plaintiff to testify to a tender of the hogs on the 28th day of November, 1870. It is contended that this was one day too late. There is no case exactly like this in the reports of the decisions of this court. Counsel for the appellee refer us to *Adams* v. *Dale*, 29 Ind. 273, as exactly in point. But we cannot agree with them in this opinion. There the lumber sold was to be delivered "on or before August 1st," and it

was held that the 1st was included.   This could not have been held otherwise, for it was expressly stipulated that it might be delivered "on," as well as before, the 1st.   Here the contract, as alleged in all the paragraphs of the complaint, was to deliver "from the 15th to the 28th."   A case more nearly in point is *Cook* v. *Gray*, 6 Ind. 335.   In that case, the contract provided for the delivery of the hogs "between the 10th and 20th of November," and it was held that the twentieth was too late.   The language of the contract in that case not being exactly similar to the words used in the contract in the case under consideration, we have made search for other cases more exactly in point.   In *The King* v. *The Inhabitants of Gamlingay*, 3 Term R. 513, it was held that an indictment against the parish of B., for not repairing a road leading from A. to B., was exclusive of B.   In *Newman* v. *Beaumond*, Owen, 50, "in an action of debt on a bond, bearing date the 9th of July, the defendant pleaded a release of all actions the same day, *usque diem dati ejusdem scripti*, and it was adjudged that the obligation was not discharged, because the release does exclude the 9th day on which it was made."

In *Nichols* v. *Ramsel*, 2 Mod. 280, the defendant pleaded a release of all demands "till the 26th day of April," etc.   It was held by three of the four judges that by the language "till the 26th day of April," a bond dated that day was not released.   See, also, *The King* v. *Stevens*, 5 East, 244.

In *Doe* v. *Smyth*, Anthon, 243, second edition, the lease was "from the 1st of May next until the 1st of May, 1817," and it was held that from the 1st day of May was exclusive of the first day.

In *The People* v. *Walker*, 17 N. Y. 502, it was held that the word "until" the 1st day of January was exclusive in its meaning.

From these authorities we think we are justified in holding that the proper construction of the contract in question, "from the 15th to the 28th," is that both the 15th and 28th are to be excluded.   There are no other words in

Newby *v.* Rogers.

the contract or any circumstances to show that the words are intended to include those days. It follows that the evidence of an offer or tender of performance on the 28th day was improperly admitted by the court. It may be remarked that some of the paragraphs of the complaint, those which allege no other offer of performance than on the 28th, are bad for this reason also.

The sixth point relates to the refusal of the court to strike out the parol evidence of the plaintiff above referred to. We need not consider this question again.

The seventh involves the correctness of the ruling of the court in allowing one Smith to testify that, from the 29th of July to the 10th of September, he bought hogs at eight dollars gross. The object of this evidence was, no doubt, to corroborate the testimony of Rogers, the plaintiff, that the hogs were sold at eight dollars per hundred gross, and not net. The objection made to it was that it was irrelevant and illegal. The argument in support of it is, that if this man was paying eight dollars per hundred gross for hogs during a period of time, covering the time when the contract in question was made, therefore, the parties to this suit must have made their contract at the same price per hundred gross; that is, that you may prove what the terms of a contract between A. and B. were, by proving that C. and D. made a contract conforming to what you allege the contract between A. and B. to have been. It is not shown that this witness purchased hogs in the same neighborhood, or that he was purchasing hogs of the same size and quality. We do not know upon what principle of law the admission of this evidence can be sustained. We think it was improperly admitted.

The eighth question relates to the admissibility of the evidence of one Ratliff of a conversation which he had with Newby, the defendant, about the word "net" in the contract, in which Newby said the word was in the contract, but he knew Rogers did not understand it, at the time it was made;

that he did not intend to hold him to the contract, if he did not want to stand to it. The objection to this evidence is, that there was no *non est factum* in the complaint verified by affidavit. We need not examine this question further than we have already done.

One Phelps was allowed to testify for the plaintiff, over the defendant's objection, that he had sometimes bought hogs; had not bought any lately. When hogs were bought by weight he thought the custom was that that meant gross. This evidence was also intended, we presume, to corroborate the plaintiff's statement that the hogs were sold by gross, and not net weight. If men always made their contracts conformably to prevailing customs, it might fairly be presumed that these men did so. But as such is not the fact, the evidence proved nothing, and should not have been admitted.

The other points made in the motion for a new trial seem to have no foundation in the bill of exceptions.

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion; costs to appellant.

*W. March, D. Chambers,* and ―― *Saint,* for appellant.

*J. Brown* and *R. L. Polk,* for appellee.