Becker v. Mason.

## E. H. BECKER v. JASPER P. MASON.

1. STATUTE OF FRAUDS, *Contract Within.* Where B. and M. enter into a contract whereby B. is to convey or cause to be conveyed to M. certain real estate belonging to B.'s wife, and M. agrees in consideration therefor to transfer to B. certain bank stock, and no note or memorandum of the contract is reduced to writing or signed by either party, *held*, that the contract comes within § 6 of the statute relating to frauds and perjuries, and cannot be enforced in an action brought by B. against M. for the recovery of damages because of M.'s refusal to transfer or deliver the bank stock.

2. ENTIRE CONTRACT, *Vitiated.* And in such a case, where B. in addition to the real estate above mentioned also agreed to execute to M. certain promissory notes for said bank stock, and no part of the contract is performed by either party, but afterward and within proper time B. offers to perform his part of the contract, *held*, that the infirmity of the contract with respect to the real estate vitiates and destroys the force and efficacy of the entire contract.

### *Error from Franklin District Court.*

ACTION brought by *Becker* against *Mason*, to recover damages for the failure on the part of *Mason* to perform an alleged contract for the exchange of certain bank stock on the

part of *Mason* for certain real estate and money on the part of *Becker.* The case was tried by the court without a jury, and the court made the following conclusions of fact and of law:

"1. That on the 11th day of February, 1882, the defendant was the owner of sixty-five shares of the capital stock of the People's national bank of Ottawa, Kansas, a banking association duly organized and incorporated under the laws of the United States, and then and now doing business at Ottawa, in this state, and said stock was of the par value of $100 per share.

"2. On that day, the plaintiff, by parol agreement with the defendant, contracted for the purchase of said shares of stock at the price of $110 per share, to be paid for as follows: $2,500 in real estate, being a house and lot in Ottawa, and being the homestead of the plaintiff, the legal title thereto being in the name of the plaintiff's wife, to be duly conveyed by a good and sufficient warranty deed to said defendant; $1,000 on the 1st day of July, 1882; $1,000 on the 1st day of January, 1883; $1,000 on the 1st day of January, 1884; and the balance, $1,650, on the 1st day of January, 1885; the said deferred payments to bear interest at the rate of ten per cent. per annum, and to be secured by the transfer to said defendant of said shares of stock as collateral.

"The said transfer was to be made and the deed of said real estate delivered at the office of Jordan & Hibbard, real-estate agents at Ottawa, Kansas, on the 17th day of February, 1882. No note or memorandum of said agreement was ever made in writing, but the sale rested entirely in parol.

"Afterward, on the same day, the defendant informed the plaintiff that one J. P. Harris claimed the stock in question; to which the plaintiff responded that he would hold him, defendant, to the contract.

"3. On the 17th day of February, 1882, at the place appointed, the plaintiff tendered full and complete performance on his part of said agreement, and then and there demanded performance on the part of said Jasper P. Mason and the transfer of said stock as agreed, which the defendant refused.

"Said defendant had, after the making of said parol agreement and before the 17th day of February, 1882, sold, assigned and delivered said stock to another party.

"On said 17th day of February, at said appointed place, the plaintiff duly tendered to the defendant a good and suffi-

cient deed of conveyance in fee simple, with proper covenants of warranty, conveying perfect title to the real estate as agreed, and also produced and tendered his promissory notes for said deferred payments in all things as agreed upon.

"4. All the conditions of said agreement were kept and performed by said Becker, and he became and was entitled to a performance of on the part of said defendant, had such agreement or some note or memorandum thereof been made in writing, and duly signed.

"5. Some evidence was offered tending to show that the actual cash value of said stock at the time and place agreed upon for said transfer was one hundred and fifty dollars per share; but the court, being of the opinion that said agreement is void by reason of its resting in parol, makes no findings as to the value of such stock.

"As conclusions of law from said facts, the court finds that said parol agreement was void because of the statute of frauds, and that no action can be sustained thereon."

Judgment accordingly for the defendant. *Becker* brings the case here for review.

*C. B. Mason*, and *A. W. Benson*, for plaintiff in error.

*A. Franklin*, and *W. Littlefield*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by E. H. Becker against Jasper P. Mason, to recover damages for the failure on the part of Mason to perform an alleged contract for the exchange of certain bank stock on the part of Mason for certain real estate and promissory notes on the part of Becker. The case was tried by the court without a jury, and the court, after making certain findings and conclusions, rendered judgment in favor of the defendant and against the plaintiff, for costs. The plaintiff brings the case to this court for review.

The court below decided the case wholly upon the ground that the contract was void under the 6th section of the statutes relating to frauds and perjuries. (Comp. Laws of 1879,

ch. 43, § 6.) This section, so far as it has any application to the present case, reads as follows:

"SEC. 6. No action shall be brought whereby to charge a party . . . upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them, . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

In the present case, the contract between the parties was wholly in parol, and it was in substance as follows: Mason was to transfer to Becker sixty-five shares of the capital stock of the People's national bank of Ottawa, Kansas, which shares were of the par value of $100 each, but were valued by the parties at $110 each, aggregating $7,150, and Becker was to convey or cause to be conveyed to Mason certain real estate, which was at the time the homestead of Becker, and the title thereto was in Becker's wife; and also agreed to give Mason his four promissory notes, payable at different times from about five months up to about three years. The real estate was valued at $2,500, and the notes in the aggregate were to be for the sum of $4,650. No note or memorandum of this contract, or of any part thereof, was ever made or reduced to writing, or signed by either of the parties.

No question was raised in the court below respecting the validity or invalidity of this contract under the homestead exemption laws, and the court below did not decide any such question, but simply held that under the statute relating to frauds and perjuries the action could not be maintained; and this it held for the reason that the contract was in part concerning real estate, and that no note or memorandum thereof was ever made or signed by either of the parties.

It will be noticed that the statute above quoted includes all contracts "for the sale of lands;" all contracts for "any interest" therein, and all contracts "concerning" lands, and it is the *contract* upon which the action is to be brought "to

charge a party," and not something else; and it is the *contract*, or some note or memorandum thereof, upon which "the party [is] to be charged," and not something else. It is not the sale, or the purchase, or the transfer, or a release, or some other special thing affecting or "concerning" the real estate upon which the action is to be brought; nor is it any one of these special things upon which "the party [is] to be charged." The contract necessarily embraces two parties, each contracting with reference to the real estate—either of whom may be charged upon the contract, if the contract or some note or memorandum thereof is reduced to writing and signed by such party; but neither of whom can be charged, unless the contract or some note or memorandum thereof is reduced to writing and signed by "the party to be charged." The contract, note or memorandum must in all cases be in writing; it must in all cases be signed by one of the parties, and it must in all cases be signed by the party who is eventually to be charged upon it. And this "party" may be the owner of the real estate, or any other person contracting with reference thereto. In the present case, neither of the parties owned the real estate with reference to which they made the contract. The statute provides in substance that no action shall be brought "to *charge* a party" upon the contract, unless "the party to be *charged*" has executed in writing some note or memorandum of the contract.

It will be seen that the statute does not attempt to make parol contracts concerning real estate void, but simply provides in substance that no party shall be "*charged*" upon them, unless the contract, or some note or memorandum thereof, has been reduced to writing "and signed by *the party to be charged.*" The statute merely relates to the proof of the contract—providing in substance that the contract must be proved, if proved at all, by some *written note or memorandum* of the contract, *signed* by the party to be charged, which party is generally the defendant in the action. The object of the statute seems to be to require that the proof concerning contracts relating to real estate shall be in writing, and signed

by the party against whom the proof is offered. The object of the statute is to prevent any person from being charged by parol evidence upon an alleged parol contract concerning real estate. This view of the case we think is sustained by all or nearly all the authorities. (Browne on the Statute of Frauds, §134; 1 Gr. Ev., §268; 2 Kent's Com., p. 510; *Grafton v. Cummings*, 99 U. S. 100; *Newby v. Rogers*, 40 Ind. 9; *Justice v. Lang*, 42 N. Y. 494; *Old Colony Rld. Co. v. Evans*, 72 Mass. 25; *Laythoarp v. Bryant*, 2 Bingham's New Cases, 735.)

The case of *Cadwalder v. App*, 81 Pa. St. 194, is not in conflict with the foregoing view. That case was decided under a statute which was passed solely for the protection of land-owners; and it was decided upon a statute similar to §5 of the statute of Kansas relating to frauds and perjuries, which requires that the instrument shall be signed only by the land-owner, or his agent. Besides, in that case the contract was reduced to writing and signed by *both the parties* to the instrument, and therefore that case is wholly unlike the present case, where no note or memorandum was signed by either of the parties, nor was even reduced to writing. We know of no decision in conflict with the views we have enunciated in this case. In the case of *Worrall v. Munn*, 5 N. Y. 229, the party to be charged did sign the written instrument upon which the suit was brought, and of course the court held that he was liable. That case is like all other cases where the owner of the real estate is the party to be charged. In the present case, neither of the parties owned the real estate concerning which the contract was made..

The next question to be considered is whether the contract between Becker and Mason may be upheld and sustained as against Mason in any particular. The contract, as before stated, was not wholly a contract concerning real estate, but it was also a contract concerning bank stock and promissory notes. If the contract had been solely a contract concerning bank stock and promissory notes, it would be binding upon the parties and could be proved by parol evidence; but as the contract was partially concerning real estate, and as no

note or memoradum was made thereof or signed by either of the parties, must the entire contract fail? It would seem from the authorities that it must. (Browne on the Statute of Frauds, § 140, *et seq.;* Sugden on Vendors, ch. 4, § 3, ¶ 10, p. 128; 1 Parsons on Contracts, p. 455, note *n;* 3 id., p. 17, note *g; Fuller v. Reed,* 38 Cal. 99, 109; *Atwater v. Hough,* 29 Conn. 508, 515; *Baldwin v. Palmer,* 10 N. Y. 232, 235, and cases there cited.)

It must be remembered that this contract was entire, and was also wholly executory. The whole of the consideration on one side was to be given for the whole of the consideration on the other side, and no part or portion of the contract on either side has ever been performed. Becker within proper time offered to perform the contract on his side, but Mason refused performance on his side, or to accept performance on the side of Becker. The consideration on the part of Becker was the real estate and the promissory notes; and these were all to be given in their entirety and in bulk for the consideration on the other side; and the consideration on the other side was the bank stock; and this was to be given in its entirety and in bulk for the consideration to be given on the part of Becker. If the contract had been severable, one portion of it might be held good, and the other portion bad; or if the contract had been partially performed, then it might be held to be partially good, or entirely good, or at least the party performing a portion of the contract would have some remedy for his loss. But as we have before stated, the present contract was an entire contract, and not severable; and it was purely executory, and no part of the same has ever been performed; hence we think the infirmity with respect to a portion of the contract vitiates and destroys the force and efficacy of the whole of the contract. This, we think, follows from the authorities heretofore cited, and from others which might be cited.

The judgment of the court below will be affirmed.

All the Justices concurring.