In the Matter of the Application of LESTER M. FRIEDMAN and
LOUIS B. MUTNICK, as Executors, etc., of JOSEPH M. GOLD-
BERG, Deceased, to Obtain a Determination as to the Validity,
Construction and Effect of Certain Dispositions of Property
Contained in the Last Will and Testament of JOSEPH M.
GOLDBERG, Deceased.

MIRIAM SCHILLER and Others, Appellants; LESTER M. FRIED-
MAN and LOUIS B. MUTNICK, as Executors, etc., and Others,
Respondents.

First Department, May 4, 1917.

Corporations — termination of corporate life by expiration of term
stated in charter — title to corporate property — when sole stock-
holder may devise equitable interest in real estate owned by cor-
poration — will.

A corporation ceases to exist by virtue of the expiration of the term stated
in the certificate of incorporation, and no adjudication of a court is
necessary to terminate the corporate life.

Upon the expiration of the term of corporate life of a corporation its
property is vested in its directors as trustees for the owners of the stock,
subject only to the payments of the claims of creditors.

Where a corporation which had never done any business save to take title
to a particular piece of real estate which the owner of all its stock con-
tracted to purchase prior to its incorporation, and for the partial pay-
ment of which said owner had advanced the money, ceases to exist by
virtue of the expiration of the term stated in its charter, and has no
creditors, the owner of the stock has an equitable interest in said real
estate which he may dispose of by will.

Provisions of a will executed by such owner examined, and *held*, that it
was his intent to devise all his interest in the real property in question.

DAVIS, J., dissented.

APPEAL by Miriam Schiller and others from a decree of the
Surrogate's Court of the county of New York, entered in the
office of said Surrogate's Court on the 21st day of September,
1916, construing the will herein.

*Isidor Frey* [*J. M. Cohen* with him on the brief], for the
appellants.

*Raymond Ballantine,* for the respondent Marie B. Goldberg.

*John F. Couch,* special guardian, for the respondent Ruth
Miriam Goldberg.

DOWLING, J.:

Joseph M. Goldberg died on January 2, 1916. He left a last will and testament, duly admitted to probate by the Surrogate's Court of New York county on February 15, 1916, whereof the clause sought to be construed read as follows:

"*Second.* My real and personal property located and situated in Pomona, Rockland County, New York, I hereby give, devise and bequeath to my sisters Gussie, Miriam and Pearl, to have and to hold for their use and occupation, during the lifetime of my sisters Gussie and Pearl, and upon their death the title to said property shall vest in the Young Women's Hebrew Association of New York, to be used as a retreat for convalescent working women. Should the said association decline the said bequest, then the said title shall vest in any Jewish charitable institution that my executors shall select; on condition that the said property shall be used as a retreat for convalescent Jewish working women."

The personal property referred to in this clause of the will consisted of household furniture contained in a building erected upon real estate at Pomona, Rockland county, N. Y., which was the only property in said town or county in which testator ever had been interested. This real estate consists of about forty-seven and one-half acres of land. Prior to September, 1908, the testator, Joseph M. Goldberg, entered into a contract for the purchase of said property from John McNamara, Jr., and Edward McNamara for the consideration of $4,200, whereof the sum of $1,000 was to be paid in cash and the balance in a purchase-money mortgage, due in five years and bearing interest at six per cent. Thereafter and on September 24, 1908, Goldberg caused to be incorporated under the laws of the State of New York a corporation known as "Joseph M. Goldberg" (hereinafter referred to as the corporation) with a capital stock of $1,000, divided into twenty shares of the par value of fifty dollars, whereof Goldberg subscribed for eighteen shares, Boris Franklin for one, and Shepard Saet for one. The duration of the corporation was fixed for five years from the date of incorporation. Its business was "to purchase and sell farm land, to give bonds secured by mortgage on real estate." The first meeting of the incorporators and stock-

holders was held on September 28, 1908, when Goldberg stated that he was the owner of a contract for the purchase of the property in question (setting forth its terms), and that he was willing to assign the contract to the corporation if it would complete the purchase; further offering to advance $1,000 in cash to enable the corporation to make the purchase and to accept for such $1,000 the entire capital stock of the corporation. At this meeting Goldberg, Franklin and Saet, all three incorporators, were present. This offer "after careful consideration and motion made and seconded, was duly accepted. The board of directors were authorized to carry said acceptance of the aforesaid contract into effect by a majority vote of the meeting." Upon the same day the board of directors of the corporation met, the same three persons being present. A motion was adopted accepting Goldberg's offer, and providing for the completion of the purchase of the property by the payment of $1,000 in cash, the corporation to give back a purchase-money mortgage for $3,200. It was further resolved that the subscriptions of Franklin and Saet be canceled and the entire capital stock of the corporation — $1,000 — be issued to Goldberg in consideration of his payment of the $1,000 cash on account of the purchase price. The board of directors again met on October 6, 1908, when Goldberg reported that he had paid the $1,000 in cash for the corporation, had executed a purchase-money mortgage for the balance, had received the deed for the property and had also received the twenty shares of capital stock of the corporation in return for his $1,000. The deed of the property to the corporation was dated October 5, 1908, acknowledged October 10, 1908, and recorded in the clerk's office of Rockland county October 12, 1908. Neither the stockholders nor the directors of the corporation ever had another meeting. No stock ever was issued to Franklin or Saet. The corporation never had a bank account nor an office, and the only book it appears to have kept was a minute book containing the minutes of the meetings before referred to. Despite search made, no stock ledger of the corporation has been found nor any certificate of stock of the corporation issued to Goldberg. It owned no other property save this real estate, no pro-

ceedings were ever taken to dissolve it, and it did no business of any kind. · It is conceded that Goldberg paid the interest on the mortgage on this property during his lifetime. It appears that $1,750 was paid on account of the mortgage on December 13, 1913, and it is not claimed that it was paid by any one other than Goldberg himself. Goldberg occupied the original house on the property and enlarged it and turned it into what is called an "Egyptian castle." There was an uncompleted building on the property, which was being erected thereon by Goldberg. Concededly the personal property in the house on the premises belonged to Goldberg. Evidently he always regarded the property as his own, and disregarded the fiction of ownership in the corporation, in which he had vested the nominal title for his own purposes. This was so apparent that when the appellants asked the witness Solon Schiller what Goldberg had told him in reference to the disposition of the property at Pomona, referred to in the will, the learned surrogate excluded the evidence, saying: "There is no question about the man's intent. * * * I take it for granted that he thought he owned it and that he wanted to give it to his sisters and the Young Women's Hebrew Home. The question is, can he give away the property of the corporation?" On December 12, 1912, Goldberg and his wife entered into a separation agreement whereby he paid to a trustee the sum of $9,000 in full satisfaction of her right to maintenance and support, and for the support of their daughter, Ruth M. Goldberg, as well as in release of all the wife's claim and right of dower. The testator's will bears date November 30, 1915. The property is now worth $10,000 subject to the balance of $1,500 due on the purchase-money mortgage.

Treating the corporation as the legal owner of the title to this real estate during its corporate life, it is clear that title could not remain in it after it legally ceased to exist. The corporation by its certificate of incorporation died at the expiration of five years from the date of incorporation, viz., on September 24, 1913. At the end of the term for which it was incorporated the corporation ceased to exist by virtue of the expiration of that term and no adjudication of a court was necessary to terminate the corporate life. (*People ex rel.*

*Haberman* v. *James*, 5 App. Div. 412, 416; 9 Am. & Eng. Ency. of Law [2d ed.], 569; 2 Morawetz Priv. Corp. [2d ed.] § 1005; *People* v. *Walker*, 17 N. Y. 502; *Sturges* v. *Vanderbilt*, 73 id. 384.) Upon the expiration of the term of corporate life of the corporation, its property was vested in its directors as trustees for the owners of the stock, subject only to the payment of the claims of creditors. (*Heath* v. *Barmore*, 50 N. Y. 302; *Sturges* v. *Vanderbilt*, 73 id. 384.) In the case at bar the directors of the defunct corporation held title to the property only as trustees for Goldberg, who owned all the stock in the corporation. He was the equitable owner of the real estate belonging to the former corporation, subject only to the payment of creditors. (*National Bank of Watertown* v. *Landon*, 45 N. Y. 410.) This corporation never did any business save to take title to this particular piece of real estate, and there is no proof that it had any creditors. Goldberg, therefore, was the owner of an equitable interest in the real estate in question which was the subject of devise and passed under his will, his intent to devise all his interest in the real property in question under the second clause of his will being clear and undisputed. (*Lessee of Smith* v. *Jones*, 4 Ohio, 115, 122; *Williams* v. *Hassell*, 73 N. C. 174; *Heirs of Wright* v. *Minshall*, 72 Ill. 584; *Woods* v. *Moore*, 4 Sandf. 579; *Battey* v. *Battey*, 94 Neb. 729; 144 N. W. Rep. 786.)

The decree of the Surrogate's Court is reversed and a decree directed to be made that testator was the owner of the equitable title to the real property mentioned in the second clause of the will, and that such clause is valid and effective to pass said equitable title of the testator in such real property to the beneficiaries therein named; the provisions for costs in said original decree to be modified by disallowing costs to Marie B. Goldberg and allowing seventy dollars costs each, instead, to the attorneys for the Young Women's Hebrew Association and to the attorney for Miriam Schiller, Gussie Mutnick and Pearl Goldberg, an infant. Costs and disbursements of this appeal to be allowed to both appellants and respondents who have appeared therein, payable out of the estate.

CLARKE, P. J., LAUGHLIN and SHEARN, JJ., concurred; DAVIS, J., dissented.

Decree reversed and decree ordered as directed in opinion, with costs to both appellants and respondents who have appeared herein, payable out of the estate. Order to be settled on notice.