LUCENE H. JOHNSON

*v.*

ABNER T. BOWEN, executor, et al.

[Decided September 17th, 1915.]

1. It is to be assumed that a testator intended to dispose of all his property.

2. In the construction of a will the court must do everything in its power to discover the testator's intentions, and to see that they are carried out, if possible.

3. Testator, whose only heirs and next of kin were a sister, a brother, and several nephews and nieces, and the total value of whose real estate was $27,095, and the proceeds of whose personal property after the payment of his debts, an annuity, and specific bequests amounted to $25,500, who devised the "residue of my estate—all monies and incomes," to the establishment of a free hospital as a memorial gift to his father and mother, appointed a friend as his executor, and one as his executrix who was familiar with his plans, intended to leave the residue of both his real and personal property for such purpose, and did not limit the phrase "residue of my estate" merely to "monies and incomes," and hence did not die intestate as to his realty.

4. The essential idea of a "charitable trust" is that its benefit is to be for the whole public, or some large class of the public as distinguished from private persons; the fact that the beneficiaries must be indefinite also distinguishes such a trust from a private trust.

5. Charitable trusts are treated with much greater leniency by courts of equity than are private trusts, and such courts will stretch their powers to sustain and carry out a charitable trust.

6. Any person capable of taking and holding real and personal property may be a trustee of a charitable trust, including aliens and married women.

7. A devise of the residue of testator's estate for the establishment of a free hospital as a memorial gift to a city, open to persons of any religious denomination whatsoever, and to all or any of the medical profession in good standing, sufficiently defined the purpose of the trust; and the testator's mention that an executrix was familiar with his plan and would direct and arrange for its execution would not influence the court to refuse to execute it.

8. A devise of the residue of an estate to establish a free hospital as a memorial gift to a city, appointing the testator's friend as an executor, and appointing as executrix one familiar with his plans under whose direction and arrangement with the mayor and aldermen of the city the hospital was to be established, vested in the executors and the municipal authorities discretion as to the arrangements for carrying out the charitable trust, so that it was not void for uncertainty as to whether the title passed to the executors as trustees or to the city.

9. In such devise the provision that the hospital was to be a free gift to the city under such direction and arrangement as the executors might make with the mayor and aldermen of the city was not in contravention of law.

10. Under a will leaving the residue of an estate for the establishment of a free hospital as a memorial gift to a city, where the municipal authorities were ready to accept it, where the estate exceeded $50,000, and would have exceeded $60,000 except for a contest, and a small hospital, together with the land, might be established for $15,000, and an endowment of $20,000 could be advantageously used, the hospital would be established.

11. Under a devise of the residue of an estate consisting of realty and personalty, directing the sale of part of the personalty when in the judgment of the executors it should be most beneficial to the estate; the proceeds to go to a hospital to be established by direction and arrangement of the executors and the municipal authorities, the court would appoint the executors and the mayor of the city as trustees to carry out the will.

On pleadings and proofs.

*Mr. G. Bartram Woodruff* and *Mr. Foster M. Voorhees,* for the complainant.

*Messrs. McDermott & Enright,* for the heirs and next of kin.

*Messrs. Condict, Condict & Boardman, Mr. Henry B. Johnson* and *Mr. Edward J. West,* for the defendants executors and the city of Logansport.

LEWIS, V. C.

George F. Johnson died in June, 1910. At that time he was living on his farm at Mountainside, Union county, New Jersey. On the 23d of December, 1909, he made and executed his will, which reads as follows:

"In the event of my demise before it is time for me to form my will in the regular way, I devise and decree that the residue of my estate—all monies and incomes—after the payment of my just and due debts and providing for such appropriations as herein mentioned shall go to the establishment of a hospital in the City of Logansport Indiana.

"In furtherance of these plans I appoint my friend Abner T. Bowen of Delphi Indiana—and New York, to be my executor—to be assisted by A Josephine Smith wife of Willis J. Smith of Philadelphia as executrix—Said A Josephine Smith being familiar with all my plans—

"I devise and desire this hospital to be a free gift to the City of Logansport, under such direction and arrangement as my executor. Abner T Bowen and my executrix A Josephine Smith may make with the Mayor and Aldermen of the City of Logansport.

"This hospital is designed to be a memorial in the City of Logansport to my father Israel Johnson and his beloved wife Mary—my Mother and to be known as the Israel and Mary Johnson hospital.

"Said hospital to be free to persons to any religious denominations what so ever and to all or any of the medical profession in good standing.

"I devise and desire that a sum shall be held by my executor and executrix sufficient to pay to Mrs. George W. Miles the sum of thirty three dollars per month.

"I devise that such sum shall be sent to Mrs. George W. Miles—the sister of my beloved wife (now deceased) on the first of each month at Weedsport, New York or at such place as she may designate said sum of thirty three dollars to be sent to her monthly so long as she shall live.

' "To Mrs A Josephine the Cousin and name sake of my wife (now deceased) I devise and bequeath all jewelry together with the personal effects of my wife clothing Books, all personal belongings—etc.

"I also devise that all furniture—and bricabrac—now in my house shall belong for ever and be owned by said Mrs A Josephine Smith—Such a part of it as she may wish to retain—the balance to go to said hospital—or sold as my executor and executrix may in their judgment seem best.

"I devise and decree that the indebtedness of the Mrs Smith Co as charged upon my books remain in tact until such a time as arrangement for payment can be made—

"I devise that the stock and implements belonging to my farm should be sold at auction to the highest bidders, the monies thereby obtained to go to the estate for the benefit of said hospital—

"Such sale to be made at a time when in the judgment of the executor and executrix—is most fitting for the benefit of the estate—"

The testator left no descendants, widow or parents. His heirs and next of kin were a sister, a brother, and a number of nephews and nieces.

His estate consisted of his country estate or farm, on which he resided at the time of his death, which consisted of about one hundred and seventy-one acres, from which he derived no income; an apartment-house in New York, heavily mortgaged, which produced no income over operating expenses, interest and taxes; also considerable cash in bank; also in the Hartog Candy Company and other investments in personal securities. There were, in addition, the personal effects, furniture and stock on the farm on which he died. Besides these, he had contracts with the Equitable Life Assurance Society, which produced the income on which he lived. He had been connected with the Equitable Life Assurance Society by two agency contracts running from 1891 to 1906, under which he was entitled to receive commissions upon policies solicited by him for twenty years from the date of each policy. He had retired from business on December 31st, 1906, and the income upon which he was living

at the time of his death consisted, for the most part, of the commissions paid, monthly, under these contracts.   His other interests in personal securities and deposits produced an income of considerably less than one thousand dollars per annum.

The buildings on the farm have been burned since the testator's death, and insurance has been collected, amounting to $8,022.48, the land itself being valued at $17,150.   His real estate in New York has been foreclosed and has netted the estate $1,922.89.   The total value of the real estate of which he died seized amounted to $27,095.37.

The proceeds of the personal property on hand (after the payment of the debts of the decedent; the annuity mentioned in the will, which has been paid up to April 1st, 1915; the delivery to the legatees named in the will of the jewelry, &c., specifically bequeathed; the payment of the costs and allowances of the contest of the will, and the transfer of inheritance tax from New York to New Jersey) amount to about $18,000, to which must be added payments from the Equitable Life Assurance Society, which will amount to between $7,500 and $10,000, making a total of about $25,500.

The estate has been diminished since the decedent's death by circumstances which he could not have foreseen, viz., the costs of the contest of his will by the heirs and next of kin, which said costs amounted to the sum of $10,900.

It is contended by the negative that the words in the first paragraph of the will, "all monies and income," are words by way of explanation to show just what the testator meant to be included by the words "the residue of my estate," and that, therefore, the testator died intestate as to his real estate, citing the case of *Leigh* v. *Savidge, 14 N. J. Eq. 124.*

The counsel for the positive have cited the case of *Torrey* v. *Torrey, 70 N. J. Law 673,* wherein Judge Dixon wrote the opinion for the court of errors and appeals, in which the court said:

"But it is argued that these considerations are not sufficient to overcome a certain legal presumption against disinheriting the heir.   That presumption originated in an artificial system which does not exist among us, a system designed to avoid the

division of landed estates. So far as it accords with the natural impulse to provide for one's family and kindred, it still deserves weight."

Again, in the same case, the court says:

"In attempting to interpret a will, the first suggestion naturally arising is, that the testator intended to dispose thereby of all his property."

A careful reading of this will has satisfied me that the testator intended to leave the residue of his estate, including both real property and personal, for the purpose of establishing a hospital in the city of Logansport, Indiana, to be a memorial to his father and mother. The will was not drawn up by a lawyer, and the testator was a sick man at the time he drew it up. The language of the will shows very clearly what his intentions were, although he evidently did not understand the exact meaning of all the legal terms that he used. But that is entirely unimportant. His intentions are all important, and the court must do everything in its power to discover them and see that they are carried out, if it be possible. The testator clearly attached no particular meaning to dashes. In the ninth paragraph he uses a dash five times, and this paragraph shows very clearly that his knowledge of the art of punctuation was extremely limited. He apparently knew that nowadays punctuation marks are in use for the purpose of expressing ideas effectively. Punctuation is an important aid to grammar, though not indispensable. The ancients had no punctuation whatever. It will be noted that the dash was the favorite punctuation mark of the testator, and he used it constantly in place of commas.

I am entirely satisfied, therefore, that the testator did not intend to limit the meaning of the phrase "residue of my estate" to merely "monies and income." The will proves, very clearly, that the testator very greatly preferred the use of dashes to commas, and for that reason he used them. As the court is seeking the testator's intention, in endeavoring to arrive at the meaning of the testator on a question of the meaning of punctuation marks, I think it must be influenced in ascertaining his intent by the meaning the testator evidently gave to the same punctuation marks in the other paragraphs of the will.

The next question is: Is the purpose of the trust legally ascertained? This is a charitable trust, and the essential idea of a charitable trust is, that the benefit of the trust is to be for the whole public or some large class of the public as distinguished from private persons. The fact that the beneficiaries must be indefinite distinguishes the charitable trust sharply from the private trust; and charitable trusts are treated with much greater leniency by the courts of equity than are private trusts; and so friendly is equity to the charitable trust, that it will stretch its powers to sustain and carry out a charitable trust. Any person capable of taking and holding real and personal property may be a trustee, including aliens and married women, and a statute requiring trustees to be residents of the state is unconstitutional. In *Smith* v. *Smith, 54 N. J. Eq. 9,* the court says:

"Suppose a purpose to create a charity appears—not generally, but of a limited and special character—and the will fails to disclose the limitation, can this court, in defiance of the plain requirement of the statute that the will shall be in writing, add to it verbal expressions of the testator which will supply and define the limitation? And is the case made stronger by the testator's direction that the reference shall be had to these expressions? I do not perceive any reason which will justify such action. In favor of a charity clearly indicated, the court will so interpret general terms of description in the will creating it as to render the plain purpose capable of enforcement; but where the will fails to indicate what the purpose is, the court will not disregard a statute to supply that which the will omits. * * * Here is a trust for a purpose which the testator has failed legally, at least, to define. The court cannot ascertain the purpose, and, therefore, it cannot execute the trust."

In the case just cited, the testator clearly stated that he had certain plans on which the school was to be conducted, and it was very clear that he did not intend that the school should be conducted on any other plans than those he had in his mind, and as there was no legal way of finding out what those plans were, the court held that it could not execute the trust.

*85 N. J. Eq.*          Johnson *v.* Bowen.

In this case, however, the purpose of the trust is legally defined. The testator, it is true, mentions the fact that the executrix is familiar with all his plans. That surely will not influence the court to refuse to execute the trust. Doubtless, he thought it would be a good thing to appoint her, not to interfere with his clearly-defined plans, but to do what she could to help to carry them out.

It is also contended by the negative that the provision for the establishment of a hospital in the city of Logansport is void for uncertainty, the uncertainty referred to being whether the legal title to the residuary estate passes to the executors as trustees to found a hospital and turn it over to the city, or whether it passes to the city itself; and in case the legal title of the residuary estate is held to vest in the executors as trustees, whether they have a power of sale of the real estate which the condition of the estate does not require to be sold to pay debts.

I think the provisions of the will come within the limits of certainty required of charitable trusts. The testator vests his executors and the municipal authorities of Logansport with discretion as to arrangements to be made to carry out his charitable intent, and this is sufficient. *Jones* v. *Watford, 62 N. J. Eq. 339; Miller* v. *Porter, 53 Pa. 292; 6 Cyc. L. & Pr. 950; 3 Pom. Eq. Jur. (3d ed.)* § *1025; Sherman* v. *Con'g Home, 176 Mass. 349; Gillan* v. *Gillan, 1 L. R. Ir. 114; Ould* v. *Washington Hospital, 95 U. S. 303.*

The next contention is, that the provision

"to be a free gift to the City of Logansport, under such direction and arrangement as my executor, Abner T. Bowen and my executrix A. Josephine Smith may make with the Mayor and Alderman of the City of Logansport"

is in contravention of law.

I cannot uphold that contention. *Thomson* v. *Norris, 20 N. J. Eq. 489; Hesketh* v. *Murphy, 36 N. J. Eq. 304; 3 Pom. Eq. Jur.* § *1025.*

The next question is, whether the will of the testator, as to establishing a hospital, can be carried out.

The estate exceeds $50,000, and would have exceeded $60,000 except for the contest already mentioned. The complainant has shown that a perfectly appointed and amply endowed hospital sufficient for the needs of Logansport would be very expensive; and that is not disputed. But the will does not say that the hospital is to be sufficient to provide for all the city's needs. A small hospital could be built, according to the testimony, the building costing not more than $5,000, and suitable land can be bought for about $1,500 or $2,000 an acre, and it was satisfactorily shown that an investment of $15,000 in a small hospital building, and a $20,000 endowment, could be used to advantage, and that a gift of $25,000 would justify the building of a hospital. The mayor of the city of Logansport says that the city is ready to accept the provisions of the will. There was no occasion for the city to employ counsel on the contest, as the executors defended the will and sustained it.

I shall hold that the will of the testator as to the establishment of the hospital can be carried out.

In regard to the question whether the executor and executrix are seized of the whole estate in fee-simple, with power to sell and convey the real and personal estate, reduce the estate to money, and after paying or providing for the specific legacies and the annuity, to apply the net proceeds to the establishment of the hospital—I am in considerable doubt whether it will not be necessary for the court to appoint trustees. The testator, in the eleventh paragraph of the will, says:

"I devise that the stock and implements belonging to my farm should be sold at auction to the highest bidders, the monies thereby obtained to go to the estate for the benefit of said hospital—

"Such sale to be made at a time when in the judgment of the executor and executrix is most fitting for the benefit of the estate—"

In the ninth paragraph of the will he makes a somewhat similar provision, all referring to personal property. The question arises, why he did not make a similar provision for the sale of his real estate. It is very singular. He was a sick man, and, therefore, it may be assumed that his mind was not as active as it would have been otherwise. He evidently knew very little

about legal matters, and all he cared about was to have the hospital established according to the terms of his will, and as long as that was done, that was all he cared about. I think his intention was to have his executors attend to all the details and help the matter along in every way they could, taking it for granted that the municipal authorities of the city of Logansport would also do their part. I, therefore, think that the court should appoint trustees for the purpose of carrying out the will, and it seems to me that the executors and the mayor of Logansport, Indiana, should be appointed as such trustees.

I shall so advise.