Henry Vander Roest died in 1930, and by his will, made the year before, after a few pecuniary bequests, gave the residue of his estate to his executor in trust to pay the income to his son Henry Chester Vander Roest for ten years, then the principal; if he died within the period, income to support his issue until twenty-one, then the corpus; if the son died within ten years without leaving issue, corpus to the son's widow and to a niece in equal shares. *Page 369 
By a codicil executed the same day as the will, and apparently at the same writing, the testator devised 10-12-14 Orchard street, Newark, to the son. The legal title to the property was in the Elite Realty Company, a corporation formed by the testator, of which he owned all the capital stock.
The complainant-trustee prays a construction of the will and a declaration of rights thereunder. The son joins in the prayer and by counter-claim sets up: That the testator caused the Elite Realty Company to be formed in 1917; at that time he owned the Orchard street property, and to defeat his wife's inchoate right of dower (sic) gave a $5,000 note, caused the holder to enter judgment on it, and the sheriff to sell the property to one Meyer, who conveyed it to the company; that the company held the property as "passive" trustee for the testator, who always dealt with it as his own, and at his death was the equitable and sole beneficial owner. He prays that it be decreed that the company holds the mere naked legal title, that he (son) is the sole equitable and beneficial owner, and that the company convey to him the legal title.
There is nothing of proof of the testator's alleged evil motive, but from the agreed state of facts it may be assumed that the testator caused the title to be put in the name of the company for his convenience; that he collected the rents and paid the charges; there is no trace of minutes of meetings of directors, or of issue of stock, or of a bank account. The property is encumbered by several building and loan mortgages given by the company upon which the testator paid the interest and the dues on the shares. The title to another property, 27 Walnut street, was also in the company.
Were this a bald question of legal title to land, equity would not presume to answer; the decision would be exclusively for the law courts. Torrey v. Torrey, 55 N.J. Eq. 410; Hoagland v.Cooper, 65 N.J. Eq. 407. Though the bare statement in the bill, the record title to the property, and the naked prayer for a construction of the will and a determination of the rights of the parties, seemingly invite *Page 370 
an adjudication ordinarily for the law courts, the appeal is, in fact, to equity's jurisdiction over trusts and for its guidance of trustees in their duty, justified by the complainant's liability to account, as trustees of the capital stock of the Elite Realty Company, for its administration of the affairs of the corporation. Farmers' Loan and Trust Co. v. Pierson,222 N Y Supp. 532. The question of title is incidental to the instructions rightfully sought. The counter-claimant, too, presents a cause essentially equitable: That the Elite Realty Company holds the bare legal title to the property of which he claims to be the equitable owner, seeking to be clothed with the legal estate — a relief to be had in equity only. The inherent jurisdiction of the court in such matters finds extension in the power granted to determine and declare the equitable rights of persons claiming under wills, by the act of 1915. Cum. St. 271.
What the testator meant is unmistakable. His intention to devise this particular piece of real estate to his son is manifest, and conceded on all sides. The contention is that, as the title was not in him but in the company, the devise is inoperative and his intention cannot be effectuated.
The son took nothing by the abstract devise in the codicil. As to that Chancellor Kent said in M'Kinnon v. Thompson, 3 Johns.Ch. 307:
"The devise of the home and lot was null and void, inasmuch as the testator had no legal or equitable title to it at the date of the devise. * * * A devise is in the nature of a conveyance, or an appointment of a specific estate and nothing passes, but what the testator owned at the time of the devise. No rule is better settled than that which declares that the testator must have a legal or equitable title in the land devised at the making of the will, or nothing will pass. A title subsequently acquired is of no avail. All that courts of equity have done is to consider an equitable interest founded on articles for purchase and which equity would enforce, as real estate which will pass by a devise.Langford v. Pitt, 2 P. Wins. 629; Greenhill v. Greenhill,Pr. Ch. 320; Potter v. Potter, 1 Ves. 147, 399. Where a devise thus fails *Page 371 
for want of a title at the time, the court cannot relieve the devisee out of other parts of the testator's estate. A deficiency in specific legacy (and every devise is necessarily specific) is never supplied in that way. The gift totally fails. Ashton v.Ashton, Cas. t. Talbot 152; 2 Ves. 569 S.P."
The devise cannot be given effect on the theory that the equitable title was in the testator upon a resulting trust, for even though he paid the purchase price, which may be assumed, the property was conveyed with intent to vest the title, legal and equitable, absolutely, in the company, organized by the testator for that purpose. This fact rebuts the presumed intention from which resulting trusts spring. Further, the testator having enjoyed the corporate privileges and immunities, and chargeable with the corresponding corporate duties and responsibilities, an assertion of a resulting trust, in the circumstances, is to confess a fraud upon the statute. Jackson v. Hooper, 76 N.J. Eq. 592.
Nor can the devise be given effect upon the theory advanced by the devisee that the equitable title was in the testator by virtue of possessing all the capital stock of the company. Absolute ownership is in the corporation, for the ultimate beneficial use of stockholders, in a sense as trustee for them; but stockholders have neither legal nor equitable estate in the property of the corporation. The corporation alone can convey. Neither a majority nor all the stockholders can divest it of title. They may accomplish, but themselves cannot do it. The corporation is their instrument, they the instrumentalities by which it functions extraordinarily, and through their appointees, the board of directors, ordinarily. In the terse language of Mr. Justice Holmes in Klein v. Board of Tax Supervisors,282 U.S. 19:
"The corporation is a person and the ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members."
Our duty, nevertheless, is to carry out the testator's intention, if possible, consistently with the rule of law (Johnson v. Bowen, 85 N.J. Eq. 76; Den, Nelson v. Combs,18 N.J. Law 27), but the task cannot be accomplished by *Page 372 
holding that the codicil conveyed title to the Orchard street property, much as we know it was intended that it should. Title was not in the testator, though he owned all the stock of the holding company. He could not convey it by deed; he was not privileged to devise it by will. And it would, indeed, be a bold and unwarranted step if the court should resort to his intention, obvious as it may be, as a substitute for the requirements of the law for transferring title to real property. The corporate existence of the Elite Realty Company may not be ignored and the title cannot be regarded as in the testator, however plain it may be that he controlled and always treated it as his own and meant to devise it. Professor Wormser's view that in a situation like the present the corporate fiction should not be disregarded, but always to be ignored when invoked to promote fraud or injustice, and his forceful argument of the point, supported by a wealth of cases, are persuasive that title to corporately owned property may be transferred only through the media provided by law. Wormser, The Disregard of the Corporate Fiction.
Maryland, in Bauernschmidt v. Bauernschmidt, 101 Md. 148,
disregarded the fiction and treated the property of a corporation as belonging to the owner of all the capital stock. Professor Wormser refers to Alabama as the other wayward state, but it seems to have returned. Thompson v. Bank of Tuskegee,74 So. Rep. 37.
In New York, in In re Winburn's Will, 240 N.Y. Supp. 208, Surrogate Slater apparently went off the doctrine. There the testator devised land held by a corporation of which he owned all the stock and the surrogate ignored the fiction and upheld the devise, in the face of what he recognized as sound legal principles, but upon the entirely inadmissible notion that the owner of all the stock is the equitable owner of the corporation's property. Shortly before, in In re Brown's Ex.,226 N.Y. Supp. 1, the same surrogate refused to ignore the corporate fiction and held an executor accountable for the value of land of a company of which the testator was the sole stockholder, the proceeds of which the executor had appropriated, claiming that the land had been given to *Page 373 
him by the testator, and that it was held for him in trust by the corporation. The learned surrogate, in denying the validity of the gift, said:
"The court cannot concur in the legal theory advanced by the distinguished counsel for the executor that a trust in the Rockwood street property was created by the testator, because hedid not own it at the time of the making of the memoranda. The Nod-A-Way Company, Incorporated, owned the Rockwood street lots, and the company was the legal owner, who only could operate pursuant to section 242, Real Property law, and declare a trust. There are no cases in this state where corporate entity is disregarded, and the property of a company considered the property of even a single stockholder, unless fraud is shown to exist. * * * The doctrine of corporate entity cannot be disregarded. Matter of Bush's Estate, 124 Misc. 674;209 N.Y. Supp. 776. We cannot, and should not in the instant case, look beyond the corporate form to the purpose and to the officers, who are identified for that purpose. Farmers' Loan and Trust Co. v.Pierson, 130 Misc. 110, 116, 117; 222 N.Y. Supp. 532, and cases cited. * * * The leading case on the subject in this state isBrock v. Poor, 216 N.Y. 387; 111 N.E. Rep. 229 (1916), where Judge Hiscock, writing for the court, said: `One who by purchase or otherwise becomes the owner of all the capital stock of a private corporation does not thereby become the legal owner of its property, but title to the latter is vested in the corporate entity.' Citing Button v. Hoffman, 61 Wis. 20;20 N.W. Rep. 667; 50 Am. Rep. 131. `In no legal sense can the business (or in an equal sense the property) of a corporation be said to be that of its individual stockholders. It is true that they may have an interest in the business carried on, and an influence in controlling its conduct, but they have created a legal entity * * * and that entity is alone responsible to persons dealing with it for the conduct of such business.' CitingWatson v. Bonfils (C.C.A.), 116 Fed. Rep. 157, with approval where Judge Sanborn wrote: `It is one thing to vest title to property in a corporation. It is another to divest it. Anyone *Page 374 
may deed land to a corporation, but no one but the corporation can reconvey it. At the time this assignment was made, the title to these lots was in the realty corporations. * * * The corporations which held it were existing entities as distinct and separate from their stockholders and creditors as is one individual from another.'"
The decree was affirmed in 232 N.Y. Supp. 371, but reversed by the court of appeals, 252 N.Y. 366, where it was held that the corporation took the property subject to the trust declared by the memoranda of gift.
In the Winburn Case the surrogate cited the following cases as supporting his departure from the standard doctrine: In reFoley's Ex'r, 230 N.Y. Supp. 305, a dicta by Surrogate Schulz, ignoring the fiction upon the authority of In re Bush, supra, cases, cited by Surrogate Slater in the Brown Case, as authority for the fiction.
In In re Friedman, 164 N.Y. Supp. 892, there was no contradiction of the fiction. The charter of the corporation had expired. Mr. Justice Dowling held that title to its property devolved upon the directors as trustees for stockholders, and that hence the sole stockholder became vested of the equitable title and as such his devise carried the legal title.
In In re Cartledge, 192 N.Y. Supp. 838; affirmed,197 N.Y. Supp. 902; affirmed, 236 N.Y. 515, practically like the case here, the devise was construed to convey the shares of stock in the company, all owned by the testator. And in In re Bush,209 N Y Supp. 776, the gift was construed as if the testator had said: "I direct my executors to dissolve the Charlton Realty Company of which I own all the stock and further direct them to give Ruth Ethal Marlow the specified shares of the Mackay Companies, which were issued to said Charlton Realty Company." In neither was the corporate fiction laid aside, but the court effectuated the testator's intention by regarding the substance rather than the description of the gift.
We incline to the Brown Case, rather than the Winburn Case, as embodying the correct principles and we are of the opinion that the corporate fiction may not be disregarded so *Page 375 
that the legal title to the property may pass by the will. But the view does not frustrate effectuating the testator's intention. There is nothing in the way of the trustee's carrying out the intention. The testator supplied the means. All the corporate stock is in the hands of the trustee. It may function through the corporation, which it controls, and cause it to convey. It has not only the power to comply, but it is its obligation to adjust itself to meet the plainly given directions of its creator. Let it dissolve the corporation and as trustees convey, or have the corporation resolve to convey, if that be more convenient.
Marshall's Ex'rs v. Hadley, 50 N.J. Eq. 547, urged by the complainant in denial of the court's power to carry out the testator's will, it will be observed, involves uncertainty as to the subject of the gift. The testator devised a house and lot which he did not own in a town where he held a mortgage on a house and lot. The court held it was not at liberty to assume that he meant the mortgage. Here there is no question as to certainty of the devised property and of the intent of the testator.
The son will take subject to the mortgage encumbrance. Whether payments made on the building and loan shares are to be credited on the mortgage debt will be decided upon a consideration of the membership contract in the association, the particulars of which have not been presented, nor has the point been argued. *Page 376