In the Matter of the Estate of GEORGE H. BURR, Deceased.

Surrogate's Court, New York County, January 14, 1941.

*Cadwalader, Wickersham & Taft* [*Robert LeRoy* and *Clifton S. Hadley* of counsel], for the petitioners.

*Barron, Rice & Rockmore* [*George P. Halperin* and *Eugene V. Weissman* of counsel], for Howard Courtney Burr and others, respondents.

*Chadbourne, Hunt, Jaeckel & Brown* [*Henry W. Happel* of counsel], for J. M. d'Assern, individually, respondent.

*Edward D. Bolton*, for William J. Dixon, respondent.

*George H. Fox*, for The Salvation Army, residuary legatee.

*Frederick L. Kane*, special guardian.

FOLEY, S. In this construction proceeding the executors seek a determination as to the meaning, validity and effect of subdivision (b) of the fourth article of the will. The single issue litigated may be briefly stated as follows: The testator made a specific bequest of certain shares of stock. These shares were not owned by him in legal title but were held in the name of a personal holding company of which he owned at the time of its incorporation one hundred per cent of the stock. At the time of the execution of the will he owned approximately ninety-three per cent of the holding company stock, the remaining seven per cent was held by his wife. The form of record ownership of the shares, specifically bequeathed, never changed from the date of the execution of the will to the date of his death. By lawful dissolution of the holding company, the stock specifically bequeathed will come into the hands of his executors. Is the specific bequest valid? Did the stock pass to the specific legatee? May the clearly expressed intent be carried out or be frustrated?

The will is dated November 14, 1938, and in so far as material here, it reads as follows: " I bequeath to my stepson Joseph M. d'Assern, Twelve hundred fifty (1,250) shares of the Preferred Stock, par value $100 per share, and Three hundred and thirty-three (333) shares of the Common Stock, without par value, of Burr & Company, Inc., a corporation of the State of Delaware."

Testimony has been submitted by the executors tending to show the circumstances surrounding the ownership and transfer of the stock of Burr & Company, Inc., for some years prior to the making of the will. Additional evidence has been received concerning the manner of the holding of the stock subsequent to the date of the will, and concerning its present status. All this testimony stands undisputed. Upon it the surrogate holds that the

specific legacy is valid, that the intent of the testator must be effectuated, and that the securities described in the will became the property of the specific legatee as of the date of death of Mr. Burr. Dividends which accrued upon the stocks since the date of death are likewise payable to Mr. d'Assern.

The ascertainment of the intent of the testator to make this specific gift of the securities mentioned, and the tracing, identification and allocation of these securities to the executors, and their ability to deliver the stock to the specific legatee, render the solution of this problem relatively simple. It has been given undue complication by the particular opposition of counsel for certain legatees and for the general guardian of an infant, who together with the special guardian of other infants, challenges the validity and effectiveness of this bequest.

Mr. Burr left a gross estate of about $2,000,000. He had for many years been engaged in the general investment business, first, as senior member of the partnership which bore his name, and later as chairman of the board of directors of the corporation formed to take over the business. The business was incorporated on February 14, 1933, under the name of Burr & Company, Inc. Thereupon, there were issued to Mr. Burr shares of stock in the new corporation, identical in character and amount with the stock which is the subject of dispute here. Mr. d'Assern was the stepson of the testator and for many years had been associated in his business, serving under the partnership and subsequent corporation, Burr & Company, Inc.

Some ten days before the incorporation of the investment business, Mr. Burr procured the incorporation in the State of New York of a personal holding company known as George H. Burr & Co. Inc. To him was issued all of the capital stock of this holding company. All of the securities and cash originally placed with the holding company were his. From time to time he transferred to that company his individually owned securities approximating $1,000,000 in value. About four months after the incorporation of his business he effected a transfer of the stock in dispute to the holding company, and that company continued to be the record owner of this stock to the date of Mr. Burr's death. The value of the stock in dispute, at the time of its transfer to the holding company, was nearly $127,000. At the time of his death it was worth about $100,000.

The only change in the ownership of the stock of the holding company occurred by way of a gift of certain shares which Mr. Burr made to his wife in December, 1934, which then constituted her the owner of about thirteen per cent of the corporate stock. The

details of this transaction not only serve to fix the respective rights of the two stockholders in the property of the holding company, but are so illuminative of the testator's conception of his interest in these securities that a review of these facts becomes necessary. This evidence was supplied by Mr. John Belck, who was Mr. Burr's private secretary and, in addition, the accountant-bookkeeper for him individually as well as for the holding company. He is one of the executors of the estate.

It appears that shortly before the transfer of the stock in the holding company to his wife in December, 1934, Mr. Burr had discussed with Mr. Belck his plan to make a gift of certain securities to his wife. Belck pointed out to him that these securities were not held in individual ownership by the testator, but that the greater part of them were assets of the holding company. He also explained that the transfer of these securities from the corporation to Mrs. Burr would require the payment of large income taxes. Mr. Belck recommended that the best way to make the gift to Mrs. Burr was to transfer to her shares in the holding company. Thereupon, the arrangement was made between husband and wife for the transfer of part of the stock of the holding company to her as a gift from husband to wife. As part of the understanding, both of the parties agreed that the securities held by the company, which Mr. Burr had originally intended to give to his wife, should be earmarked for her benefit within the corporate assets, and that the remaining securities were to be allocated and earmarked as the property of Mr. Burr. Mr. Belck testified that Mr. Burr at that time said to his wife: " I want to make you a gift of certain securities. However, I cannot at the moment without paying undue taxes give you exactly what I wanted to give you. Therefore, I give you 2.6 shares of George H. Burr Company Corporation. You may consider these as representing certain other securities which I, as John [Belck] tells me, will be able to transfer to you in form without incurring heavy taxes."

I find upon this particular phase of the evidence that a valid agreement was made between husband and wife for the division of the securities of the holding company. I accept the testimony of Mr. Belck as true. The statement in the petition of the executors that the understanding between the parties did not amount to a binding agreement was an erroneous conclusion of law and has been modified by the facts in evidence. There were involved no intervening rights of any creditors of the holding company because it had none. If dispute had arisen between husband and wife respecting the enforcement of the agreement, it could have been enforced as against the dissenting party. (*Clark* v. *Dodge,* 269

N. Y. 410, 416; *Manson* v. *Curtis*, 223 id. 313, 325; *Kassel* v. *Empire Tinware Co.*, 178 App. Div. 176, 180; *People ex rel. Recess E. & I. Corp.* v. *Hugo*, 191 id. 628, 632.) In *Manson* v. *Curtis* (*supra*) the "rule that all the stockholders by their universal consent may do as they choose with the corporate concerns *and assets*, provided the interests of creditors are not affected" (italics mine), was expressly recognized. In *Clark* v. *Dodge (supra)*, Judge CROUCH said: "The rule recognized in *Manson* v. *Curtis*, * * * was thus stated by BLACKMAR, J., in *Kassel* v. *Empire Tinware Co.* (178 App. Div. 176, 180): 'As the parties to the action are the complete owners of the corporation, there is no reason why the exercise of the power and discretion of the directors cannot be controlled by valid agreement between themselves, provided that the interests of creditors are not affected.'" Moreover, where, as in the pending proceeding, all stockholders consent to act, it is equivalent to a situation where a single person holds all of the stock of the corporation. (*Ripin* v. *United States Woven Label Co.*, 205 N. Y. 442, 447.)

Instead of any disagreement having arisen, however, both husband and wife substantially carried out their agreement. Mr. Burr procured the transfer by the corporation to his wife of certain of the securities included in his list of intended gifts to his wife under the agreement of 1934. These securities were of substantial value. Only one block of stock had been undelivered to her at the time of his death. Mrs. Burr's interest in the holding company was reduced by the transfer of half of her shares to her husband who, in turn, resold them to the holding company thus increasing his proportionate ownership of the outstanding stock.

After the testator's death, the holding company was dissolved by the joint action of the only stockholders — the executors of this estate and the widow. The securities held as corporate assets have been the subject of partial distribution. Mrs. Burr has received the stock allocated to her. Substantial distributions of securities originally allocated to the husband have been made to his executors. The securities which are the subject of the specific legacy to Mr. d'Assern will, in the course of the liquidation and distribution, find their way, within the next few months, into the hands of the executors where they will be available for delivery to the specific legatee. The agreement, therefore, between husband and wife will have been actually effectuated by lawful corporate action subsequent to his death. By the prospective delivery of the stock in dispute here to the executors, the equitable interest in them which the testator possessed at the time he made his will, will have ripened into actual possession by the executors as the conduit for delivery to the specific legatee.

The payment of dividends to the husband and wife based upon their respective shares of stock of the holding company did not affect the validity of the agreement of distribution between husband and wife. Such distributions were made as regular corporate acts. They were required to be made in that form under the applicable corporation and tax statutes. They were plainly made with the knowledge and full consent of the testator.

The modern trend of authorities is toward liberality in the treatment of the subject of a specific legacy. The test is the substance of the gift and not the words in which it is attempted to be given. (*Matter of Manning*, 196 App. Div. 575; affd., 232 N. Y. 512; *Matter of Martin*, 252 id. 582; *Matter of Cartledge*, 118 Misc. 131; affd., 203 App. Div. 899; affd., 236 N. Y. 515; *Fidelity Union Trust Co.* v. *Roest*, 113 N. J. Eq. 368; 166 A. 918; *Matter of Friedman*, 177 App. Div. 755; *Matter of Bush*, 124 Misc. 674.) The fact that the subject of the gift is not held in individual ownership does not affect the enforcibility of the specific gift where no rights of creditors or other third parties are involved. If the property exists in substance and is still owned or controlled by the testator at the time of his death, the intention to bequeath it must be carried out.

In *Matter of Cartledge* (*supra*) the facts were strikingly similar to those here. The testatrix devised to her brother certain real estate owned by her with a particularly broad description as located " on Long Island, New York, and in Brooklyn, New York." At the time of the making of her will and at the time of her death, she owned in individual title no such real property. Prior to the date of the will, she, her brother and her three sisters were actually owners as tenants in common of certain real estate in localities mentioned in the will. A real estate corporation was then formed by the family, the property was conveyed to it and shares of stock were issued proportionately to the respective interests of the former individual owners. Such was the situation when the testatrix made her will. There, as here, an agreement was made between the testatrix and her brother (the specific devisee) for the devise of the real property to him, and in it certain obligations for financial advancements for the payment of the carrying charges were assumed by him. The surrogate held that the intention of the testatrix to bequeath the shares of stock which represented her ownership in the realty corporation to her brother was clear, and that he was entitled to take such shares under the specific devise of the real property. " It is the substance of the attempted gift with which we are chiefly concerned, not the words in which it was attempted to be given." The separate agreement between brother and sister was likewise sustained. The determination was affirmed without opinion by the Appellate Division and by the Court of Appeals.

In *Matter of Friedman* (*supra*) the Appellate Division, First Department, held that the specific gift of real and personal property in a will was valid, notwithstanding the fact that title to the realty was vested in a close corporation, all of the stock of which was owned by the testator. In that case also, as here, the property was held in corporate title at the time of the execution of the will. Mr. Justice DOWLING, in his opinion, stated that the testator was " the owner of an equitable interest in the real estate in question which was the subject of devise and passed under his will, his intent to devise all his interest in the real property in question under the second clause of his will being clear and undisputed."

The same conclusion was reached by me in *Matter of Bush* (*supra*). I restated the criterion to be applied to the will and the facts. The test again was the substance and real ownership of the property and not the normal manner in which it was held. There, the testator specifically bequeathed certain shares of stock of the Mackay Companies with identification by description of the numbers of the two certificates of stock. The shares were held by a holding company, of which the testator owned all the stock. The executors, as in the pending case, dissolved the corporation. Thereby the assets of the company, including the shares of stock specifically bequeathed, were turned over to them as executors. The intent of the testator thus became easily capable of being carried out. Delivery of the shares to the specific legatee was decreed.

In *Fidelity Union Trust Co.* v. *Roest* (*supra*) the testator devised a parcel of real property to his son. The legal title to the real property at the time of the making of the will was in a corporation formed by the testator, of which he owned all of the stock. The court said: " There is nothing in the way of the trustee's carrying out the intention. The testator supplied the means. All the corporate stock is in the hands of the trustee. It may function through the corporation, which it controls, and cause it to convey. It has not only the power to comply, but it is its obligation to adjust itself to meet the plainly given directions of its creator. Let it dissolve the corporation and as trustees convey, or have the corporation resolve to convey, if that be more convenient."

Other decisions have given full effect to the intent of a testator despite a misdescription of the property, or the fact that it was held in corporate form rather than in technical individual ownership, or in cases where the securities were changed by corporate action or other form of alteration. (*Matter of Martin*, 252 N. Y. 582; *Matter of Manning*, 196 App. Div. 575; affd., 232 N. Y. 512; *Matter of Walters*, 172 Misc. 207; *Matter of Winburn*, 136 id. 19.)

Counsel for the respondents who resist the effectiveness of the specific gift cite numerous cases where the courts have refused to pierce the corporate entity. None of these cases has any pertinency here because of the special facts in this proceeding. They are barren and futile attempts at distinguishments. In the face of the realities here, the authorities relied upon to defeat the gift raise merely fanciful problems. It must be stressed that the corporation is not a contending party here, nor are its creditors, its stockholders or its officers in any way involved as such. The parties who seek to defeat the specific gift are all persons seeking to protect their legacies, subordinate in priority, under the will of this decedent. All of them claim interests through the testator, George H. Burr. None of them pretends an independent interest in the corporation.

The purpose and intent of the testator, in the contested provision in his will, is clear beyond any possibility of doubt. What he intended to bequeath to his stepson were the shares of stock of Burr & Company, Inc., which were held nominally by the holding company but impressed, as between the only parties interested, with an equitable interest in the testator. As I stated in *Matter of Baker* (174 Misc. 93, 96): " The search for intent is the first and foremost canon of the construction of a will and all other rules of interpretation are subordinate to it. When ascertained, it must prevail. (*Matter of Buechner*, 226 N. Y. 440, 444.) It is the controlling factor, provided it does not conflict with public policy or some prohibition of statute. When declared in a lawful manner and having a legal purpose it ' has paramount potency and cannot be thwarted or nullified.' (*Eidt* v. *Eidt*, 203 N. Y. 325, 328.) "

The holding company, for years preceding the date of the will, had been treated by Mr. Burr as the agency for his individual transactions. Moneys, including his salary, were deposited with it and held in a special earmarked account for his benefit. Instead of maintaining a bank account in his individual name, he used the corporation bank account for the payment of his personal and household expenses, and all such transactions were carried out by corporate deposits and withdrawals upon corporate checks. Even stronger support for the clarity of his intent to make a specific legacy of the securities is found in the evidence of conversations leading up to the gift of securities to his wife, already reviewed above. It is everywhere apparent that he conceived of all these securities as his own and insisted upon disposing of them as such, leaving the observance of necessary legal forms to those delegated to carry his purpose into execution.

The surrogate, therefore, holds that the property mentioned in subdivision (b) of the fourth article of the will must be transferred by the executors to Joseph M. d'Assern, the legatee named therein, as soon as such property is received by them. The dividends which have accrued on such shares of stock since the date of death of the testator are likewise payable to Mr. d'Assern. (*Matter of Security Trust Co.*, 221 N. Y. 213, 217; *Matter of Mitchell*, 114 Misc. 370.)

Upon the subordinate point raised by the special guardian, that the two forms of benefits created by the subdivisions of paragraph fourth indicate an intent to prefer the trust for the benefit of the wife with remainder to certain persons, including the infants represented, the surrogate overrules the contentions of the special guardian. There is not the slightest indication of any such intention. The widow, who is the life beneficiary of the trust, makes no claim to a preference. Where the testator declared the order of priority of the legacies, he found no difficulty in tracing it in explicit language. It is elementary law that a specific legacy is not subject to abatement as against a pecuniary general legacy, whether outright or in trust. The very nature of a specific legacy carried with it no diminution because of a deficiency of assets applicable to general legacies. (*Matter of Crouse*, 244 N. Y. 400; *Crawford* v. *McCarthy*, 159 id. 514.)

Submit decree on notice construing the will accordingly and directing delivery of the certificates of stock, together with payment of the dividends which have been declared upon that stock from the date of the death of the testator.