Greenfield Estate.

Argued November 15, 1973. Before JONES, C. J., EAGEN O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Robert M. Landis,* with him *Grahame P. Richards, Jr., George B. Clothier, Robert Louis Freedman, Obermayer, Rebmann, Maxwell & Hippel* and *Dechert, Price & Rhoads,* for appellant.

*Duffield Ashmead, III,* with him *William C. Bullitt,* and *Drinker, Biddle & Reath,* for appellees.

*S. Laurence Shaiman,* for Elizabeth M. Greenfield et al., executors, appellees.

*D. Arthur Magaziner,* for guardian-trustee ad litem.

*James W. Sutton, Jr.,* Assistant Attorney General, and *Israel Packel,* Attorney General, for Commonwealth, Parens Patriae.

OPINION BY MR. JUSTICE POMEROY, July 1, 1974:

This appeal raises a question of interpretation of the will of the late Albert M. Greenfield insofar as it involves disposition of a substantial portion of a valuable collection of art, assembled by Mr. Greenfield during his lifetime. The collection, formed with the

assistance of Mrs. Greenfield, consists of sixty-six paintings and other art objects, including works by Chagall, Corot, deKooning, Giacometti, Ingres, Klee, Matisse, Miro, Picasso, Pollock, and Degas. At the time of Mr. Greenfield's death, the collection was appraised at $447,420. Except when placed on public exhibition, the paintings and other works of art were displayed in the Greenfield home in Philadelphia.

Mr. Greenfield executed his will on February 27, 1966. The clause of the will which gives rise to the dispute occurs in the sixth paragraph, which recites in pertinent part: "I give and bequeath to my said wife the use for life of such of my prints, etchings, drawings, paintings and sculpture, and any other works of art, as were acquired during our marriage . . . at the death of my wife ( or at such earlier time or times as she may wish to relinquish any of said items) as to the items bequeathed to her for life, the items so bequeathed, respectively, shall pass to THE PHILADELPHIA MUSEUM OF ART, or to such other museum or gallery of art of comparable stature and standing and likewise dedicated to the exhibition of works of art to the public, as my wife may select."

Mr. Greenfield died on January 5, 1967, and his will was duly admitted to probate five days later. Mrs. Greenfield elected to take against the will for the avowed purpose of accelerating the gift to The Philadelphia Museum of Art.

Following the testator's death, it was ascertained that legal title to the paintings and art objects which he and his wife had assembled was not uniform. The greater number of pieces, but the lesser portion in terms of aggregate appraised value ($108,470), were owned directly by the testator; the remainder, lesser in number but greater in terms of appraised value ($338,950), were owned by a corporation named the Elizabeth

Realty Company, a personal holding company controlled by Mr. Greenfield.

There is, of course, no question concerning those works of art to which the testator held title in his own name; they were completely disposable by will, and, in view of Mrs. Greenfield's election, pass directly to The Philadelphia Museum of Art. The dispute involves that portion of the collection, record title to which was held by the Elizabeth Realty Company. The facts concerning this company are as follows.

The company was incorporated in 1929, and was engaged in the real estate and insurance brokerage business under the name of Albert M. Greenfield and Company until 1956. In that year, the company sold its brokerage business and changed its name to the Elizabeth Realty Company. From that time on, it served as a repository for Mr. Greenfield's personal investments. Aside from the art objects in question, the assets of the company consisted of various parcels of real estate and securities, principally municipal bonds and stocks. Mr. Greenfield had given 100 shares of the company's common stock to his wife; he retained the remaining 2,589 shares in his own name.[1] These shares were valued at $11,360,314.68 in the inventory filed by his executors. The company was liquidated shortly after Mr. Greenfield's death, and its assets, including that portion of the art collection owned by it, are now in the hands of the executors.

The art works formerly owned by the company are claimed both by the appellant museum as remainderman of the specific bequest recited above, and by the

---

[1] Mr. Greenfield in his lifetime distributed an undisclosed number of preferred shares in the Elizabeth Realty Company as gifts to the Greenfield Foundation, members of his family, and close friends. When the company was liquidated, accumulated dividends on this stock were paid in full, and the shares were redeemed in cash.

Provident National Bank, appellee, as testamentary trustee of the residue of Mr. Greenfield's estate.[2] The auditing judge awarded the entire collection to the museum. On exceptions filed by the trustee bank and by various parties in interest in the residuary trusts, the court en banc reversed, the auditing judge dissenting, and awarded the art works to the residuary legatees. The museum then appealed to this Court.

The questions which we must decide are two: did the testator intend that the art objects owned by his personal holding company should go to The Philadelphia Museum of Art (or some similar institution) rather than form part of the residue of his estate? If so, did he have the power to effectuate this intent by will so long as the holding company retained legal title to these works of art?

"The testator's intent must be ascertained by a consideration of the entire will which of course must be read in the light of the circumstances surrounding him when he made it. . . ." *Newlin Estate*, 367 Pa. 527, 529, 80 A.2d 819 (1951); *see also Lamb Estate*, 445 Pa. 323, 325, 285 A.2d 163 (1971); *Hill Estate*, 432 Pa. 269, 272, 247 A.2d 606, 37 A.L.R. 3d 1 (1968). " 'In the interpretation of wills, the law will impute to a testator's words such meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice. . . .' " *Walker Estate*, 376 Pa. 16, 24, 101 A.2d 652 (1954); *Umberger Estate*, 369 Pa. 587, 592-93, 87 A.2d 290 (1952). With

---

[2] The ninth article of the testator's will provides as follows: "A. I give, devise and bequeath all the rest, residue and remainder of my estate to my Trustees hereinafter named, IN TRUST, NEVERTHELESS, to divide the principal into separate, equal trusts, each trust attributable to one of my children. . . ."

The Provident National Bank and the testator's executors are appointed trustees of these residuary trusts in the nineteenth paragraph of the will.

these general principles in mind, we turn first to the will itself.

The word "my" is frequently used to denote dominion and control as well as legal title. People normally speak of "my car," even though title to the automobile resides in a finance company or rental agency; "my chair" or "my seat" when the furniture in question belongs to their host, their employer, or a common carrier; "my house" when the property is leased. The court en banc recognized this fact of every-day usage, but, reading the will as a whole, it concluded that when the testator spoke of "my prints, etchings, drawings, painting and sculpture, and any other works of art, as were acquired during our marriage," he meant to refer to only those parts of his collection which were titled in his own name. We agree that the testator's intent must be gathered from the whole will, but our reading of that document points us to the opposite conclusion from that reached by the court below.

Mr. Greenfield's will reveals him as a man of broad charitable purpose, with a particular desire to benefit the citizens of his native city.[3] It also reveals his keen

---

[3] In addition to the gift in remainder of art works acquired during his marriage, the testator made similar gifts in remainder of art works acquired before his marriage, and his collection of rare books and manuscripts, to The Philadelphia Museum of Art and the Free Library of Philadelphia, respectively. The will provides specific instructions concerning the use of each gift, "[i]n order that the collection given to each of the said institutions shall have the greatest possible usefulness from an educational and cultural point of view. . . ."

During his lifetime, the testator established the Albert M. Greenfield Foundation to give continued support to his many charitable interests. He noted in his will that "[m]any and great improvements are taking place in the City of Philadelphia. The question of what ought to be done and how best to accomplish it has been among my chief concerns, not only by reason of my deep

and intelligent interest in the disposition of his substantial estate. The will, covering forty-two typewritten pages and augmented by codicils, makes a number of bequests, both outright and in trust, including a series of residuary trusts for the benefit of the testator's children. The only mention of the art collection occurs in paragraph six, which provides for specific bequests of various items of tangible personal property, including the art collection. Thirteen pages of the will are devoted to the powers vested in the testator's executors and trustees. These detailed instructions contain no hint that the trustees were expected to hold or dispose of part of Mr. Greenfield's art collection.[4] Considering the testamentary scheme as a whole, we think it unlikely in the extreme that Mr. Greenfield, who was manifestly proud of his collection and aware of its cultural value, would have made no mention whatever of the most valuable part of it. We deem it far more probable that the testator considered that he had disposed

---

personal attachment for the City which is my home and the center of my life's work, but also because the City is of great and special significance to me as to all Americans as the birthplace of this great Nation and the cradle of our fundamental liberties. The Trustees of THE ALBERT M. GREENFIELD FOUNDATION are familiar with my concepts in this regard and my philosophy on charity, education, religion, philanthropy, culture, economics and government. . . ."

[4] The executors and trustees were empowered, *inter alia*, "[t]o sell to a child of mine at its fair market value, with the written approval of my wife and all my children, any asset of my estate which such child might reasonably and fairly wish to have." Of course, if the will were construed to pass the art works to the trustee, Mrs. Greenfield's life estate, as well as the gift in remainder to the museum, would be adversely affected. We deem it significant that the will contains no parallel provision permitting Mrs. Greenfield to purchase from the estate any painting which she had helped to select during her marriage, but which did not pass to her under paragraph six.

of the entire collection by the life estate and gift in remainder provided for in paragraph six of the will.

It is, of course, a truism that "[w]ills are not to be interpreted in a vacuum. A testator's intent must be taken from the meaning of his words, but his will and a dictionary cannot always solve problems of interpretation." *Gibson v. McBurney*, 399 Pa. 195, 200, 159 A.2d 912 (1960). In ascertaining the meaning of the words used by the testator, courts may, if necessary, look beyond the language of the will itself to the circumstances surrounding him up to the time of its execution.[5] Extensive testimony of such surrounding circumstances was adduced at the audit hearing below. Our review of this evidence confirms us in our belief that Mr. Greenfield intended that the entire art collection pass under paragraph six of his will to The Philadelphia Museum of Art, or some other similar institution designated by his wife.

If we could give literal effect to the familiar figure of speech, and place ourselves in the testator's armchair as he drew up his will, we would see around us on the walls and in the living spaces of his home the

---

[5] "It has been long and well settled, and indeed it is a principle so consonant to reason that the only wonder is that it should ever have been questioned, that all of the surrounding circumstances of a testator—his family, the amount and character of his property—may and ought to be taken into consideration in giving a construction to the provisions of his will." *Postlethwaite's Appeal*, 68 Pa. 477, 480 (1871). *See generally* 9 J. Wigmore, Treatise on Evidence, §2470 (3rd ed. 1940).

It should be noted that we are not here concerned with the special and more restrictive rules governing extrinsic evidence of the testator's expressions of intent. *See generally* 9 Wigmore, *supra*, §2471 *et seq*. In the case at bar, evidence of direct statements of intent was introduced over objection at the audit hearing, but appellant does not rely on this evidence in his brief, and it is not necessary to resort to these statements in order to ascertain the meaning of the words used in the will.

entire collection assembled by Mr. and Mrs. Greenfield during their marriage, including those works titled in the Elizabeth Realty Company. No plaques or other markings distinguished the company's art works from the rest of the collection. When parts of the collection were loaned out for public exhibition, the works were indiscriminately labeled as "the collection of Mr. and Mrs. Albert M. Greenfield."[6] Among family and friends, Mr. Greenfield commonly referred to the paintings and other art objects as his own. Indeed, neither his wife, his daughter, nor the scrivener of his will knew until after his death that title to part of the collection resided in the Elizabeth Realty Company.

Elizabeth Realty was little more than an alter ego for handling the testator's personal financial affairs. Each morning Mr. Greenfield was presented with a statement of the cash balances in his personal bank accounts and in the accounts of his various companies. Whether a painting bought on a given day was acquired in his own name or that of the Elizabeth Realty Company depended upon the fortuitous circumstance of which account had the largest current balance. The will specifically authorizes the executors to liquidate any business concern in which the testator was interested. It was natural for Mr. Greenfield to assume that the assets of the Elizabeth Realty Company would pass into the hands of his executors, and that they would treat these paintings and other art objects in the same manner that he had treated them throughout his life: as his own personal property. His scrivener, who did not know that part of the art collection belonged to

---

6 This is substantially the same title as the one chosen by the testator for the museum bequest. By a codicil to paragraph six of the will, he directed that the works passing to the museum be "known and published as the ALBERT M. GREENFIELD AND ELIZABETH M. GREENFIELD COLLECTION."

the company rather than to Mr. Greenfield personally, had no reason to caution him otherwise. We conclude that the testator intended to bequeath the entire collection, including the objects nominally titled to his personal holding company, by the sixth paragraph of his will.

We turn now to the second question in this case: is a bequest of property held in the name of a closely held corporation of any legal effect? The question appears to be one of first impression in this Commonwealth; however, as appellee concedes, courts in other jurisdictions which have confronted this question have generally concluded that, if no rights of creditors or other persons interested in the corporations are jeopardized, the testator's intent should be honored. A case closely in point is *Burr's Estate,* 175 Misc. 725, 24 N.Y.S. 2d 940 (Sur. Ct. N.Y. Co. 1941), in which the surrogate's court, in a well-considered opinion by Surrogate FOLEY, sustained a bequest of stock held by a personal holding company in which the testator held a controlling interest of 93 percent, and his wife held the remaining 7 percent interest.[7] As we have noted, the Elizabeth Realty Company was little more than an alter ego of Mr. Greenfield. By the time Mr. and Mrs. Greenfield began to assemble their art collection, the company had ceased to be actively engaged in business. Its ownership of any art works at all, and which particular ones, appears to have been quite fortuitous. No creditors or other stockholders have interests adverse to the testator's intended disposition of the art

---

[7] *Accord, Matter of Bauer's Will,* 289 N.Y. 326, 45 N.E. 2d 897, 144 A.L.R. 543 (1942) ; *Stukalo's Will,* 7 Misc. 2d 1042, 166 N.Y.S. 2d 478 (Sur. Ct. Kings Co. 1957) ; *see also Bush's Estate,* 124 Misc. 674 (Sur. Ct. N.Y. Co. 1925) ; *Bauerschmidt v. Bauerschmidt,* 101 Md. 148, 60 A. 437 (1905) ; *Fidelity Union Trust Co. v. Vander Roest,* 113 N.J. Eq. 368, 166 A. 918 (1933) ; 1 Page, Wills, §16.2 (1962) ; Note, 82 U. Pa. L. Rev. 404 (1934).

collection, and we see no reason why that intent should not be given legal effect.

That part of the decree sustaining appellee's exceptions is reversed; each party to bear own costs.