## Kelly Estate

*Raymond M. Seidel,* petitioner, p.p.
*Louis J. Gagliardi,* for widow.
*J. Brooke Aker,* of *Smith, Aker, Grossman, Hollinger & Jenkins,* for residuary legatee.

TAXIS, *J.*, April 20, 1976—This matter involves a petition by Raymond M. Seidel, Esq., executor, for leave to sell real estate located in Bryn Mawr and owned by decedent at his death. The property is a mixture of a residential dwelling, which was the home of decedent and his second wife, Imelda, and a shoe repair shop and taproom. The offered price of $135,000 is satisfactory to the executor and to the residuary beneficiary of the estate, but the surviving spouse, Imelda Kelly, objects to the sale of the property.

The arguments of Imelda Kelly are based on her claim that, under a proper interpretation of decedent's will, she receives his entire estate and can, therefore, refuse to have the property sold if she so desires. The real estate represents about two-thirds of the gross estate.

Decedent's will was made in 1969, about five years before he died. He first made a number of pecuniary bequests and bequests of personal effects, and then, in item third, gave his wife ". . . that share of my estate to which she would be entitled under the Intestate Laws. . . ." In item fourth, he gave the residuary estate ". . . unto Mary Hays, if she is living at the time of my death, . . ." The residuary legatee survives. It should also be noted that her correct surname is not "Hays," but "Hay," although neither party to this controversy raises any issue as to identification.

When a testator incorporates the Intestate Act into his will by specific terminology, it is the provisions of the intestate law in effect at the time of decedent's death which govern. See Morris's Estate, 298 Pa. 25, 147 Atl. 840 (1929). We are not, therefore, concerned here with what the wife might have received had the language varied,

such as it did in Erk's Estate, 311 Pa. 185, 166 Atl. 656 (1933), and Harris Estate, 351 Pa. 368, 41 A. 2d 715 (1945). There, the bequest was of what the wife should take under the laws of Pennsylvania, and the court limited the wife to an elective share, on the theory that it is the smallest amount that Pennsylvania law would require be given to the widow under any normal circumstances.

Therefore, the first step in our analysis is to engraft on testator's will the appropriate provisions of the Pennsylvania intestate laws, which appear in section 2102 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, 20 Pa. C.S.A. § 2102, dealing with the intestate share of the surviving spouse. That section is divided into four subsections, dealing respectively with situations where there is more than one child, only one child, no issue and no issue or other designated person. The parties left no children or issue, hence subsections (3) and (4) contain all of the language which concerns us. Section 4 reads as follows:

"The surviving spouse shall be entitled to the following share or shares: . . . All of the estate if the decendent is survived by no issue, parent, brother, sister, child of a brother or sister, grandparent, uncle or aunt."

The pinch of this case develops here because testator's language is not self-explanatory but requires the identification of the relationship of the residuary legatee, Mary Hay, to Daniel Kelly, in order to determine whether section 3 or section 4 is the governing language. Section 3 limits the surviving spouse to the first $20,000 plus one-half the balance of the estate, and would, therefore, deny the spouse the absolute right to control all of the assets.

Having determined, which is not disputed, that there is an ambiguity in the will, since testator did not in any way identify, correctly or incorrectly, the relationship which Mary Hay bore to him, we must put ourselves in testator's "armchair" and try to give to his language the meaning and effect which, in all the circumstances when the will was made, will conform to his intention and be most agreeable to reason: Umberger Estate, 369 Pa. 587, 87 A.2d 290 (1952). In so doing, we must be careful not to do violence to the meaning of testator's actual language, for the court has no right to reform or rewrite a will contrary to its plain meaning. As will be seen, however, our decision does not do violence to testator's language, but only adapts it to the circumstances which were known to him, or which he believed, when his will was made.

The issue in a nutshell is that Mary Hay is testator's first cousin, not his aunt, and is, therefore, not, in fact, one of those "designated" persons which, under the Intestate Act, will take part of the estate even if there is a surviving spouse. Having determined that an ambiguity in testator's language exists, the court permitted the executor, also the scrivener of the will, to testify as to the circumstances of the document's preparation. Mr. Seidel's retained notes are sufficient to allow him to reconstruct what occurred. Mr. Seidel first made a will for decedent in 1964, which was somewhat different in pattern from his last will, but which is similar to the extent that no person named therein, except decedent's mother, had his or her relationship to decedent described.

Mary Hay became testator's residuary legatee in a will made in 1967, but, again, there was no des-

ignation of her relationship. In 1968, after his remarriage, testator made another will with the same general characteristics. In the 1969 will, his final one, decedent gave the surviving spouse her intestate share of his estate, as we have stated, and left the residue to Mary Hay. At the time of the preparation of this will, testator was advised by Mr. Seidel that his wife would receive one-half of his estate, and Mary Hay would receive the balance. Most important, during the whole period of the making of these wills, Mr. Seidel was told by testator that Mary Hay was his *aunt*. In all of the testamentary work involved, Mr. Seidel relied upon this, and once having been informed by his client of this relationship, Mr. Seidel did not question him further. Notes admitted at the hearing, made on more than one occasion by Mr. Seidel but, nevertheless, made by him, demonstrate that all the wills were drafted on this assumption.

In considering this document as it applies to decedent's survivors, we keep in mind that our primary objective is to effectuate the intention of the testator, as long as such can be legally done. In doing this, we must consider not only the document itself, from its four corners, but the overall scheme or plan of distribution of testator, and his circumstances when the will was written: Benedum Estate, 427 Pa. 408, 235 A.2d 129 (1967). Mary Hay here asks us to consider not only what testator said, which all admit is not self-explanatory, but also the factors that (1) his expressed desire and intent, confirmed by the advice of responsible counsel, was to leave half of his estate to his wife and half to Mary Hay, and (2) he was not advised and did not understand the great difference that might be caused by Mary Hay's

status as his first cousin which she was, and his aunt, which is what he called her. This latter fact is clearly one of the circumstances surrounding the making of the will that we must consider, in order to effectuate the real intent of testator: Greenfield Estate, 457 Pa. 114, 321 A.2d 922 (1974).

We are not here attempting to vary the rule which excludes evidence of a testator's instructions to the scrivener which would change his will as finally drawn and executed (Penrose's Estate, 317 Pa. 444, 176 Atl. 738 (1935)); but where such instructions clarify an admitted ambiguity and explain the pattern of distribution which testator desired but did not exactly specify within the language of the will itself, they are admissible. Cf. Burleigh Estate, 405 Pa. 373, 175 A.2d 838 (1961).

If the interpretation of testator's language in item third were as contended by the surviving spouse, the residuary clause would have been largely superfluous. Of course, the intestate law could always be changed, and testator's wife could have predeceased him; but there is no indication that he had either of these possibilities in mind. The Intestate Act, in its relevant part, has been the same for many years, certainly long before 1964, when testator's chain of wills commenced. This being so, and realizing that decedent at no time would have been survived by any of the "designated" persons in point of fact, his wife under item third would always have received the entire estate. Mr. Seidel's testimony, once admitted, explains away this problem, but without such testimony, the will has a pointless provision, and even though rigid canons of construction need not be resorted to, certainly we should avoid an in-

terpretation which renders a whole paragraph of a will impossible of application.

A final problem exists in determining precisely what portion of the estate goes to the surviving spouse. While it is not strictly necessary to decide this issue for the purpose of the present petition, since Imelda Kelly cannot control the executor as sole beneficiary, it appears wise to express our opinion on this rather than require another proceeding. Counsel for Mary Hay contends for an equal division upon distribution, on the basis of Mr. Seidel's testimony. However, the real relevance of his testimony was to identify and confirm testator's belief as to the relationship to him of Mary Hay, and to show that he acted on that belief. There is no reason to lose sight of the fact that testator did incorporate the Intestate Law in his will. If all that he meant to do by this was to give half of his estate to his wife and the other half to Mary Hay, he should have done so specifically. By using the device of the Intestate Law, he was charged with the realization that the legislature might change it, or that other circumstances in his family relationship might result in a changed disposition of his estate. We see no reason why Imelda Kelly should not have the benefit of subsection (3) of section 2102, supra, which gives her, "[t]he first $20,000 in value and one-half of the balance of the estate, if the decedent is survived by no issue." There is no issue, and once having determined that subsection (4) does not apply, because, at least for present purposes, testator left an aunt, subsection (3) governs the distribution of the estate.

## ORDER

The petition for the sale of the real estate is herewith approved.